# United States Court of Appeals
## For the First Circuit

No. 06-1633

KENNETH RUCKER,

Plaintiff, Appellant,

v.

LEE HOLDING CO., D/B/A LEE AUTO MALLS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Circuit Judge,
Siler,* Senior Circuit Judge,
and Lipez, Circuit Judge.

Allan K. Townsend, with whom Law Offices of Peter Thompson was on brief, for appellant.
Barbara Eby Racine, Attorney, United States Department of Labor, Howard M. Radzely, Solicitor of Labor, Steven J. Mandel, Associate Solicitor, and Paul L. Frieden, Counsel for Appellate Litigation, on brief for the Secretary of Labor, amicus curiae.
Jeffrey Neil Young and McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A. on brief for Maine AFL-CIO and Maine Employment Lawyers Association, amici curiae.
Elizabeth J. Ernst, with whom James E. Fortin and Douglas Denham Buccina & Ernst were on brief, for appellee.

_____

* Of the Sixth Circuit, sitting by designation.

Ann Elizabeth Reesman, McGuiness Norris & Williams, LLP, Robin S. Conrad, Shane Brennan, and National Chamber Litigation Center, Inc. on brief for Equal Employment Advisory Council and Chamber of Commerce of the United States of America, amici curiae.

--------

December 18, 2006

--------

**LYNCH**, **Circuit Judge**. Eligibility for leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., depends in part on an employee having been employed by the relevant employer "for at least 12 months." 29 U.S.C. § 2611(2)(A)(i). This case of first impression among the courts of appeals raises the issue of whether and under what circumstances an employee who has had a break in service may count previous periods of employment with the same employer toward satisfying this 12-month requirement.

Kenneth Rucker worked as a car salesman for Lee Auto Malls (Lee) in Maine for five years. Rucker then left Lee, and five years later rejoined Lee as a full-time employee. Seven months after rejoining Lee, Rucker took medical leave. Approximately two months later, Rucker's employment was terminated. Rucker filed suit claiming that the termination was in violation of the FMLA. The district court granted Lee's motion to dismiss, holding that Rucker could not combine his previous period of employment with his more recent period, and thus could not satisfy the FMLA's 12-month employment requirement.

We hold that the FMLA itself is ambiguous as to whether previous periods of employment count toward the 12-month requirement, but regulations promulgated by the United States Department of Labor (DOL), as interpreted by the DOL, establish that previous periods of employment do count. Accordingly, we reverse the judgment of the district court.

I.

Because we are reviewing the district court's granting of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), our review is de novo, and we recite and take as true the facts alleged in Rucker's complaint, drawing all reasonable inferences in his favor. See Ramirez v. Arlequin, 447 F.3d 19, 20 (1st Cir. 2006).

Rucker worked for Lee as a car salesman for approximately five years and then left Lee for approximately five years. On June 5, 2004, Rucker began working for Lee again. On or about January 20, 2005, approximately seven and a half months after Rucker rejoined Lee, he ruptured a disc in his back. Over the next month and a half, he received medical treatment for his back injury, and he took medical leave at various times because pain prevented him from working. On March 7, 2005, Lee terminated Rucker's employment; at that point, Rucker had missed a total of thirteen days of work since his injury, and he was still out on medical leave.

On January 5, 2006, Rucker filed a complaint in federal district court in Maine, alleging that Lee had terminated him for taking medical leave to which he was entitled, in violation of the FMLA. The FMLA provides that "an eligible employee" is entitled to leave for, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such

-4-

employee."  29 U.S.C. § 2612(a)(1)(D).  The issue before us is whether Rucker, at the time he took medical leave, was an "eligible employee."  An "eligible employee" is one who has been employed

> (i) for at least 12 months by the employer with respect to whom leave is requested . . .; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

29 U.S.C. § 2611(2)(A).  In his complaint, Rucker alleged that he had worked for Lee for more than 12 months, since he had previously been employed by Lee for five years.  Rucker also alleged that he had worked more than 1,250 hours since rejoining Lee in June 2004, by working more than forty hours per week.

In response, Lee filed a motion to dismiss, in which it asserted that Rucker was not an "eligible employee."  Lee did not dispute that Rucker had satisfied the hours-of-service requirement in 29 U.S.C. § 2611(2)(A)(ii), but it argued that Rucker's prior period of employment could not be counted toward satisfying the 12-month requirement in 29 U.S.C. § 2611(2)(A)(i).  Lee argued that "nothing in the plain language of the statute" permitted a prior period of employment, "remote in time," to be "tack[ed] on" to the current period.  Thus, because Rucker had taken the leave at issue seven to nine months after rejoining Lee, under Lee's theory he had not been employed "for at least 12 months."

Lee also argued that a regulation addressing the 12-month requirement, promulgated by the DOL under the FMLA, supported its position. That regulation provides as follows:

> The 12 months an employee must have been employed by the employer need not be consecutive months. If an employee is maintained on the payroll for any part of a week, including any periods of paid or unpaid leave (sick, vacation) during which other benefits or compensation are provided by the employer (e.g., workers' compensation, group health plan benefits, etc.), the week counts as a week of employment. For purposes of determining whether intermittent/occasional/ casual employment qualifies as "at least 12 months," 52 weeks is deemed to be equal to 12 months.

29 C.F.R. § 825.110(b). According to Lee, the second and third sentences of the regulation modify the first sentence to give the only circumstances under which the 12 months "need not be consecutive months." It argued that because Rucker had had no "continuing connection" with Lee, such as continuing benefits, during his five years away, he could not rely on his prior employment to satisfy the 12-month requirement.

Rucker, on the other hand, argued that "[u]nder the plain language of the FMLA," he had worked for Lee for more than 12 months. Focusing on the first sentence of the DOL regulation, he read the regulation to support his contention that gaps in employment, including his own five-year gap, do not preclude eligibility under the FMLA.

-6-

On March 10, 2006, the district court granted Lee's motion to dismiss, holding that Rucker's prior period of employment did not count toward satisfying the 12-month requirement. Rucker v. Lee Holding Co., 419 F. Supp. 2d 1, 3 (D. Me. 2006). The court reasoned that "[t]he [DOL] regulation on its face does not give any indication that two periods of employment, separated by a conceivably limitless amount of time, can be grouped to make an otherwise ineligible employee eligible." Id. at 2. Focusing on the second and third sentences in the regulation, the court held that the regulation provided for "brief interruptions in an employee's attendance," but made "no allowance for an employee who severs all ties with the employer for a period of years." Id. at 2-3.

The court also noted that there was a lack of legislative history on point and inferred from this a lack of "legislative intent to allow employees to accumulate time despite periods of long separation from employment." Id. at 3. In the absence of legislative discussion or debate, the court found that Congress did not intend to impose on employers the "onerous requirement" of "allowing an employee to leave an employer for years or decades, only to return and immediately become an eligible employee under the twelve-month requirement." Id.

II.

We begin, as always, with the language of the statute and ask "whether Congress has directly spoken to the precise question at issue." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43.

Here, there is no such statutory clarity expressing unambiguous intent. The words "has been employed . . . for at least 12 months by the [relevant] employer" can be read either to refer to only the most recent period of employment by the relevant employer or to all periods of employment by that employer. Asking how long an employee "has been employed" at a particular company is an ambiguous question if he or she has had more than one period of employment.

None of the canons of statutory construction invoked by either side eliminate the statutory ambiguity.[1] The district court invoked the canon of the "dog that did not bark," reasoning that if

---

[1] There is debate over the appropriate role of canons of construction and legislative history in the first step of the Chevron analysis. See Perez-Olivo v. Chavez, 394 F.3d 45, 50 n.2 (1st Cir. 2005); 1 Pierce, Administrative Law Treatise § 3.6, at 191 (4th ed. 2002). There is little reason, though, to question the use of such tools of statutory construction when, as here, we use them merely to confirm that the statute is ambiguous. See Perez-Olivo, 394 F.3d at 50 n.2.

Congress had intended to impose the "onerous requirement" of allowing employees to count their prior employment, it would have said so explicitly. Rucker, 419 F. Supp. 2d at 3. The rationale for the canon, however, is that some interpretations would have been so controversial as to inevitably have drawn comment in Congress; in such a situation, Congress's silence can be taken to mean that it chose the noncontroversial path. See Chisom v. Roemer, 501 U.S. 380, 396 & n.23 (1991).

That rationale does not apply in this case. The district court found that Rucker's interpretation of the statute would be, if not controversial, at least "onerous" for employers.[2] There is no indication, however, that the potential burden on employers would be so extreme as to have inevitably provoked comment in Congress. This is a case in which "[w]e have little sense whether any Member of Congress would have been particularly upset" by either result. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. 2611, 2627 (2005). As a result, the absence of congressional commentary directly on point reveals nothing, except perhaps that Congress gave little consideration to this issue.

Rucker, for his part, invokes the canon that when Congress uses different language in parallel provisions, it must

---

[2] We note that the burden on employers in adopting Rucker's interpretation is not that returning employees will be immediately eligible for leave; such employees must still satisfy the hours-of-service requirement.

have intended different meanings.  See, e.g., Russello v. United States, 464 U.S. 16, 23 (1983).  He points to the absence in the 12-month requirement of the language "during the previous 12-month period," which appears in the hours-of-service requirement.  From this difference, he argues that if Congress had intended the 12-month requirement to refer to the immediately previous 12 months, it would have said so.  See Bell v. Prefix, Inc., 422 F. Supp. 2d 810, 813 (E.D. Mich. 2006) ("[I]f Congress had intended to require 12 months of continuous employment, it could simply have done so by using the same language in both provisions.").

The trouble with Rucker's argument is that the two eligibility requirements are not sufficiently parallel to draw definitive conclusions from the difference in language.  See City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 435-36 (2002).  The statute specifies a period over which to measure the hours of service, but not as to the 12-month requirement.  That difference in language could mean, as Rucker argues, that the 12-month requirement can be met over a limitless period.  But that linguistic difference is equally consistent with the interpretation that while hours of service, so long as within the specified period, need not be continuous, some form of continuity is required to satisfy the 12-month requirement.

Indeed, Lee invokes a competing canon to derive the opposite result from the same statutory language.  Lee argues that

the two statutory provisions should be read together, as a harmonious whole. See, e.g., United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371 (1988). Under this view, the 12 months in the 12-month requirement are the same months as the "previous 12-month period" referred to in the hours-of-service requirement. Thus, the requirements are read in sequence, with the first one establishing a continuous period that includes at least the last 12 months, and the second one counting hours of service within that "previous 12-month period." Although both parties argue that their reading of the statute is "plain," the competing readings, both plausible, in fact demonstrate the ambiguity in the statute.

Nor does resort to legislative history demonstrate clear congressional intent on the precise issue before us. The Senate committee report specifically states that the 12 months in the 12-month requirement "need not have been consecutive," but the report provides no further guidance. S. Rep. No. 103-3, at 23 (1993), as reprinted in 1993 U.S.C.C.A.N. 3, 25. Similarly, the DOL notes that in years prior to the enactment of the FMLA, there had been proposed bills that would have specifically required 12 consecutive months of employment, but none of these bills was enacted. See Family Leave Act of 1990, H.R. 5374, 101st Cong. § 101(1)(B) (1990); Maternity Leave Act of 1989, H.R. 3445, 101st Cong. § 101(1)(B) (1989). In general, it is difficult to draw strong

conclusions from Congress's failure to enact previous bills and from the changes in language from one bill to another. See, e.g., NLRB v. Catholic Bishop of Chi., 440 U.S. 490, 504-06 (1979) (declining to infer from the rejection of a statutory amendment an intent to enact the opposite view). More specifically, both of these pieces of legislative history suggest that the 12 months can be "not consecutive," but as we describe below, there remains an issue of how broadly or narrowly to construe the words "not consecutive." The legislative history does not resolve this issue.

We are, as a result, in a situation in which "Congress has not directly addressed the precise question at issue," and in which deference to a reasonable agency interpretation is appropriate. Chevron, 467 U.S. at 843. Moreover, Congress specifically instructed the DOL to "prescribe such regulations as are necessary to carry out [the FMLA]," 29 U.S.C. § 2654, and the regulations at issue here were promulgated under this statutory authority after notice and comment, see 60 Fed. Reg. 2180, 2180 (Jan. 6, 1995). Congress clearly "expect[ed] the agency to be able to speak with the force of law" in promulgating such regulations, and courts must defer to the regulations' resolution of a statutory ambiguity, so long as it is "reasonable." United States v. Mead Corp., 533 U.S. 218, 229 (2001). Therefore, if the DOL regulation at 29 C.F.R. § 825.110(b) clearly resolves this case, and is reasonable, that would be the end of the matter.

The parties, however, disagree on the proper interpretation of the DOL regulation. Rucker focuses on the first sentence -- stating that "[t]he 12 months . . . need not be consecutive months" -- and reads it broadly to mean that all periods of employment count toward the requirement. Lee instead argues, and the district court accepted, that the first sentence is limited by the second and third, so that non-consecutive months count only when the employee maintains a continuing connection to the employer, as through the continuing provision of benefits. 419 F. Supp. 2d at 2-3. Neither interpretation of the regulation is unreasonable.

We are thus faced again with the task of interpreting facially ambiguous language, this time contained in the DOL regulation. When interpreting an agency regulation, courts must give substantial deference to the agency's own interpretation of its regulations, so long as that interpretation is consistent with the regulation and "reflect[s] the agency's fair and considered judgment on the matter in question." Auer v. Robbins, 519 U.S. 452, 461-62 (1997). In this case, the DOL has expressed the view that the first sentence in its regulation, allowing for non-consecutive months, is not limited by the sentences that follow, discussing how to count weeks of employment. The DOL expressed this view first in the regulatory preamble to the regulation and then in an amicus brief filed in this case (as requested by this

court).  Its views, which are consistently held and consonant with the language of the regulation, are entitled to controlling weight here.

The regulatory preamble explaining the regulation at issue makes it clear that the DOL did not intend for non-consecutive months to count only if the employee maintained a continuing relationship with the employer.[3]  The preamble mentions three proposed "limitations on a 12-month coverage test" that the agency explicitly considered and rejected: (1) the exclusion of "any employment experience prior to an employee resignation or employer-initiated termination that occurred more than two years before the current date of reemployment"; (2) the "limiting [of] the 12 months of service to the period immediately preceding the commencement of leave"; and (3) the computation of the "12 months of service as computed under bridging rules applicable to [the] employer's pension plans."  60 Fed. Reg. at 2185.  This last rejected limitation is particularly telling in that it indicates that the DOL explicitly rejected tying the FMLA computation to the computation used in providing pension benefits.[4]  The first

---

[3] The regulatory preamble was not brought to the attention of the district court or of this court by the parties.

[4] Bridging rules in a pension plan determine the circumstances under which a rehired employee can receive credit for previous periods of employment in calculating the employee's pension benefits. See, e.g., Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 618-19 (8th Cir. 1998).  The rules can cover a wide variety of circumstances, sometimes taking into account the length of prior

demonstrates that the DOL did not believe its regulation would prevent employees from relying on previous periods of employment even after a break measured in years.

Consistent with, and citing, its regulatory preamble, the DOL maintains that a five-year gap in employment, such as the one Rucker had, does not prevent an employee from using his earlier employment to satisfy the 12-month requirement. Deference to this view is appropriate here, where the views previously expressed in the regulatory preamble are supported by the amicus brief. See Auer, 519 U.S. at 462. Although the preamble does not explicitly state that a five-year gap in employment would not be disqualifying, it gives no indication that the agency would distinguish between the two-year gap explicitly described as permitted and a five-year gap. There is no risk here that the agency's view is any sort of "post hoc rationalization," rather than "the agency's fair and considered judgment," and thus there is nothing that might undercut deference to the DOL on this point. See id. (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212 (1988)) (internal quotation marks omitted).

Furthermore, for all the reasons we have described above, the DOL's interpretation of its regulation is reasonable, and that regulation, so interpreted, is a reasonable exercise of the DOL's

---

service, the length of the break in service, the length of the current service, or some combination of the above. See id.

statutory authority. Therefore, consistent with the DOL regulation, as interpreted by the DOL, we hold that the complete separation of an employee from his or her employer for a period of years, here five years, does not prevent the employee from counting earlier periods of employment toward satisfying the 12-month requirement. As a result, Rucker pleaded sufficient facts in his complaint to demonstrate that he was, at the time he took leave, an "eligible employee" under the FMLA. Because the DOL has reasonably interpreted the relevant period to include prior employment five years earlier, we conclude that Rucker's complaint states a claim.

We go no further than deciding whether the dismissal in this case was error. The DOL amicus brief states its view that a break in service of over five years would be at the "outer bounds of what is permissible,"[5] apparently suggesting that we state the same as a judge-fashioned rule. That is not our role. We agree with the DOL that there are important policy issues involved here; the point of the Chevron doctrine is that the DOL, in the exercise

---

[5] The DOL reasons that one of the rationales it gave in the regulatory preamble for permitting a gap of two years was that "the information regarding previous employment with an employer . . . [could] be confirmed by the employer's records." 60 Fed. Reg. at 2185. As the DOL notes, its regulations under the FMLA only require that employers keep employment records for three years, see 29 C.F.R. § 825.500(b), with some states requiring as many as six years, see N.J. Admin. Code § 12:56-4.4. Thus, after a gap of five or six years, an employer might not have records of a returning employee's previous employment, undermining the DOL's rationale for permitting breaks in service. This rationale, though, is not entirely consistent with other, competing rationales the agency gave for permitting breaks in service. See 60 Fed. Reg. at 2185.

of its statutory authority, must resolve these issues in the first instance. For a court to fashion as a matter of law a limiting rule not fairly contained in the existing regulatory language, but only suggested in an amicus brief, ultimately undermines administrative processes and places policy decisionmaking power in the wrong institution. See Christensen v. Harris County, 529 U.S. 576, 587-88 (2000).

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs are awarded to Rucker.