# United States Court of Appeals
## For the First Circuit

No. 06-2042

KENNETH M. KANSKY,

Plaintiff, Appellant,

v.

COCA-COLA BOTTLING COMPANY OF NEW ENGLAND;
COCA-COLA ENTERPRISES INC.; COCA-COLA ENTERPRISES LONG-TERM
DISABILITY PLAN, a/k/a CORE LTD BENEFITS; AETNA LIFE INSURANCE
COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Bernard A. Kansky, with whom Kansky & Associates was on brief,
for appellant.
Stephen D. Rosenberg, with whom Eric L. Brodie and The
McCormack Firm, LLC, were on brief, for appellees.

June 29, 2007

**LIPEZ**, **Circuit Judge**. Kenneth Kansky appeals the district court's entry of summary judgment against him in his lawsuit, filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, challenging a plan administrator's decision to deny him long-term disability benefits. We affirm.[1]

## I.

We recount here the undisputed facts briefly, and subsequently provide further detail as needed. Kansky was diagnosed with schizoaffective disorder in 1994, and was treated for that condition continuously by the same physician, Dr. Vuckovic, beginning in February 2000, extending through the entire relevant period of his disability. He worked for Coca-Cola Enterprises from April 21, 2003 to July 7, 2003, but did not thereafter return to work, claiming that he was totally disabled.

---

[1]In conjunction with this appeal, Kansky filed a motion to substitute the pseudonym "John Doe" in court records, pleadings, and decisions. However, he failed to respond to our January 3, 2007 Show Cause order with an explanation or reason for his filing of a public appendix that encompasses almost the entire lower court record. The district court opinion has already been made publicly available (apparently without objection), and all filings with this court have used the appellant's real name. Therefore, at this late stage in the litigation, changing appellant's name on all court records is not feasible. It is simply too late to impose confidentiality on the materials involved in this case. Hence the motion to substitute the pseudonym "John Doe" is denied.

On January 8, 2004, Kansky filed for benefits under Coca-Cola's long term disability ("LTD") plan, which is administered by Aetna.[2]

Kansky's initial application for benefits and the supporting medical records indicated that his disability was caused by his schizoaffective disorder. After Aetna denied his claim under the pre-existing condition exclusion clause, Kansky unsuccessfully appealed. He appealed again in August 2004 and argued, apparently for the first time, that his disability was caused by chronic fatigue syndrome ("CFS"). In support of this claim, Kansky submitted a letter from Dr. David Bell, which

---

[2] To be eligible for LTD benefits under this plan, an employee must show that (a) a physician has diagnosed him or her as "totally disabled" due to a physical or mental condition, and (b) provide proof that (1) this disability occurred while he or she was insured and (2) the disability has continued for at least 26 weeks. Benefits are not available if the disability began "during the first 12 months of your most recent period of coverage under this Plan and [was] caused, or contributed to, by a 'pre-existing condition.'" A condition is pre-existing "if, during the 3 months before the date [the employee] became covered under this Plan, [the employee] received diagnosis, treatment or services, or [] took drugs prescribed or recommended by a physician, for that condition."

Kansky argues that the pre-existing condition exclusion clause ought not apply to him because he previously worked for Coca-Cola for nineteen months between 1995 and 1996; he claims that our decision in Rucker v. Lee Holding Co., 471 F.3d 6 (1st Cir. 2006), allows him to combine those nineteen months of employment with the three months worked in 2003. If such an aggregation were permitted, Kansky would have worked for Coca-Cola for longer than twelve months and the pre-existing condition exclusion clause would not apply. However, the terms of this LTD plan expressly preclude this sort of aggregation and our decision in Rucker, dealing with FMLA benefits, does nothing to alter or contradict the clear terms of this plan. Thus, Kansky's prior employment is irrelevant and the pre-existing condition exclusion clause applies to him.

indicated that Kansky's then-current symptoms (in July 2004) were the result of CFS. Dr. Bell did not opine that CFS was the cause of Kansky's disability in July 2003. Aetna submitted the entire file, including this new letter, to a physician and a psychiatrist, and, based on their assessments, denied the claim a third time.[3] Kansky responded with a second letter from Dr. Bell, reiterating the CFS diagnosis. In early 2005, Aetna issued a final denial of the claim.

Kansky filed this suit, seeking review of Aetna's denial of benefits, as well as sanctions against defendants for an alleged failure to produce requested documents. The district court's opinion, Kansky v. Coca-Cola Bottling Co., et al., 2006 WL 1167781 (D. Mass. May 1, 2006), reviews the facts of this case and evaluates Kansky's challenge to Aetna's decision with admirable care. The court concluded that Aetna's decision "was reasoned and supported by substantial evidence." This appeal ensued.

**II.**

---

[3] Aetna explained its decision, after providing lengthy quotations from the reports issued by its reviewing physicians, as follows:

> Since the records we have reviewed support that Mr. Kansky received treatment and took drugs for schizoaffective disorder during the pre-existing condition exclusionary period, April 1, 2003 through June 30, 2003, and that his other conditions have not been established to result in a level of impairment that he would have been precluded from performing the material duties of his own occupation as of January 6, 2004, the denial of his LTD benefits due to the pre-existing condition is upheld.

-4-

## A. Standard of Review

Our review of the district court's entry of summary judgment is de novo. Cook v. Liberty Life Assur. Co., 320 F.3d 11, 18 (1st Cir. 2003). The district court, following clear First Circuit precedent, reviewed Aetna's benefits determinations under an arbitrary and capricious standard. See Glista v. Unum Life Ins. Co., 378 F.3d 113, 125-26 (1st Cir. 2004); Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). However, Kansky argued before the district court that the standard of review applicable to Aetna's benefits determination should be de novo because the insurance company both determines the benefits owed and pays any benefits after the first $35,000 (which the employer pays). Kansky cited precedents from other circuits, which apply a less deferential standard where such a "structural" conflict of interest exists. See McLeod v. Hartford Life & Acc. Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004). The district court rejected this argument and, consistent with our current law, applied the arbitrary and capricious standard.

Since the district court issued its decision in this case, the appropriate standard of review for ERISA cases involving structural conflicts of interest has come into question in this circuit. Specifically, in Denmark v. Liberty Life Assurance Co., 481 F.3d 16, 19 (1st Cir. 2007), two members of this court

-5-

expressed their dissatisfaction with our present standard of review in such cases, and urged this court to reconsider the standard of review issue in an en banc proceeding. We also noted in <u>Denmark</u> that the other circuit courts have taken a wide range of approaches to the standard of review question. <u>Id.</u> at 30-31. There is presently pending a petition for rehearing en banc in <u>Denmark</u>. That petition raises the standard of review issue in terms comparable to those used by Kansky in his appeal here. If we thought any change in the applicable standard of review (and we are not intimating in any way that there will necessarily be such a change) might affect the outcome of this appeal, we would defer a decision on this appeal until the en banc petition in <u>Denmark</u> was resolved. However, even under the de novo standard of review advocated by Kansky, Aetna's benefits determination was amply supported by the evidence.[4]

---

[4] No circuits apply a pure de novo review standard in structural conflict cases. Of the circuits that apply a less deferential standard in such cases, five of them apply a "sliding scale" standard: the level of deference given to the insurance company's decision is correlated to the severity of the conflict. <u>See</u>, <u>e.g.</u>, Fought v. Unum Life Ins. Co. of Am., 379 F.3d 997, 1004 (10th Cir. 2004); Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 379 (3d Cir. 2000); Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999)(en banc); Woo v. Deluxe Corp., 144 F.3d 1157, 1161-62 & n.2 (8th Cir. 1998); Doe v. Group Hosp. & Med. Servs., 3 F.3d 80, 87 (4th Cir. 1993). This sliding scale approach preserves the arbitrary and capricious framework, but applies greater scrutiny where the conflict of interest is greater. One circuit applies a "substantially similar" abuse of discretion standard. <u>See</u> Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 967-68 (9th Cir. 2006)(en banc). Only the Eleventh Circuit applies a standard similar to the de novo standard; it first evaluates

**B. Evidence Supporting the Denial of Benefits**

Under Aetna's LTD plan, an employee is ineligible for benefits if his disability began during the first twelve months of employment and was "caused, or contributed to, by a 'pre-existing condition." See supra note 1. The plan defined "pre-existing conditions" as those for which the employee received "diagnosis, treatment or services or took drugs prescribed or recommended by a physician" during the three months prior to the beginning of coverage under the plan. Id. Aetna denied Kansky's claim for LTD benefits because it determined that his schizoaffective disorder caused or contributed to his disability in July 2003, and hence his schizoaffective disorder was a "pre-existing condition" under the terms of the plan. That decision was consistent with the overwhelming weight of the evidence in the administrative record.

First, when Kansky initially applied for LTD benefits in February 2004, his treating physician, Dr. Vuckovic, attributed his disability to his schizoaffective disorder. Dr. Vuckovic had been continuously treating Kansky for that condition for four years and stated in his Attending Physician's Statement (which Kansky submitted to Aetna in support of his LTD benefits application) that the disability that began in July 2003 and continued to the present

_____

whether the insurance company's decision was incorrect, and if it was, the burden shifts to the claims administrator to demonstrate that the decision was not affected by a conflict of interest. See HCA Health Servs., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 993-94 (11th Cir. 2001).

was attributable to that condition. This record, offered by Kansky and created contemporaneously with his application for benefits, provides strong evidence that Kansky himself, as well as his treating physician, attributed his disability to his schizoaffective disorder.

Second, Kansky was hospitalized for a period of ten days between the onset of his disability and his application for LTD benefits. The discharge summary from this treatment stated that his primary diagnosis was atypical schizophrenia. The hospital did not diagnose Kansky with CFS.

Third, Aetna sent Kansky's medical records to two board certified physicians for their review and evaluation. Each of them concluded that his primary diagnosis, schizoaffective disorder, was the primary cause of his disability. Each credited Dr. Vuckovic's opinion, based on his long-term treatment and evaluation of Kansky, and found that the records supported Dr. Vuckovic's impression of Kansky's medical problems rather than Dr. Bell's.

Kansky argues, however, that his disability was caused exclusively by his CFS - an independent diagnosis, unrelated to his history of schizophrenia, and therefore not classifiable as a pre-existing condition. In support of his claim, he points to the two letters from Dr. Bell. The first letter, from July 2004, stated that Kansky's then-existing symptoms were "very suggestive of chronic fatigue syndrome," and that CFS "is a more accurate

clinical diagnosis than his atypical schizophrenia." The letter also acknowledged, however, that Kansky "would not fulfill the Centers for Disease Control criteria for chronic fatigue syndrome as he has a history of atypical schizophrenia." Dr. Bell recommended no alterations to Kansky's medications or treatment, and suggested only that he make an effort to "establish a very regular sleep time and a regular time for arising."

The second letter, dated January 2005, was much shorter and simply reiterated the findings stated in the July 2004 letter. It stated that Kansky's "current disability is not due to the schizoaffective disorder; it is due to chronic fatigue syndrome." Neither letter purported to provide a diagnosis for Kansky's disability as of July 2003; both stated only that, at the time Dr. Bell saw him, Kansky's symptoms could be explained by CFS.

Therefore, even if we were to credit Dr. Bell's letters and assume that his diagnosis was accurate, he simply did not opine that Kansky suffered from CFS at the time his disability began. Furthermore, Dr. Bell never offered an opinion, one way or the other, as to whether Kansky's well-documented schizoaffective disorder contributed to his disability. By contrast, every treating physician who saw Kansky stated that his medical problems were the result of his schizoaffective disorder, or complications arising from that disorder. The independent medical professionals who examined Kansky's records and provided their opinions to Aetna

-9-

agreed with this diagnosis.  On this record, there is simply no doubt that Kansky's schizoaffective disorder, for which he had received treatment during the three months prior to commencement of the LTD plan, either caused or contributed to his disability.  We find no error in Aetna's denial of benefits on this basis.


**III.**

Kansky has raised a number of additional points in his appeal.  We address them briefly.

**A.  Denial of Motion to Alter or Amend Judgment**

In the district court, Kansky filed a motion to alter or amend the judgment, on numerous grounds, pursuant to Federal Rule of Civil Procedure 59(e).  We review the lower court's denial of the motion for abuse of discretion.  See Palmer v. Champion Mortgage, 465 F.3d 24, 30 (1st Cir. 2006).  Rule 59(e) motions are granted only where the movant shows a manifest error of law or newly discovered evidence.  Marie v. Allied Home Mortgage Co., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (stating that Rule 59(e) motions are generally unlikely to succeed because the movant must "clearly establish a manifest error of law" or provide newly discovered evidence (quoting Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004)).

First, Kansky claimed that the district court erred because it "relied" on the opinions offered by Aetna's reviewing physicians, who he claimed were unqualified to provide medical opinions on his condition.  The district court found that Aetna's reviewing doctors were "certainly qualified to provide their medical opinions on whether Kansky's pre-existing schizo-affective disorder caused or contributed to his disability."  On appeal, Kansky only points out that neither of these doctors' CVs mentions any research specifically focused on CFS.  The district court did not abuse its discretion in ruling that the absence of CFS research did not render Aetna's reviewing doctors unqualified to give an opinion on the causes or contributors to Kansky's disability.

Second, Kansky argued that the court erred in "conducting its own medical research."  This claim is unfounded.  The district court provided a reasonable explanation for its use of a single medical article, which was not part of the Administrative Record, for background information.  In denying Kansky's Rule 59(e) motion, the court explained that it had consulted the article because it "played a significant role" in an earlier district court decision, which Kansky had urged the court to consider.  The court also noted that the article appeared to be "the basis for the comments of Drs. Bell, Burton, and DeFoy[5] [in this case] to the effect that Kansky

[5] Drs. Burton and DeFoy were Aetna's reviewing physicians, who examined Kansky's medical records and opined that his disability was caused, at least in part, by his schizoaffective disorder.

-11-

cannot be diagnosed [with CFS] according to the current research criteria put out by the Centers for Disease Control." Kansky, 2006 WL 1167781, at *9. There was no abuse of discretion in the court's use of this article in such a limited way.

Finally, Kansky also claimed, in his Rule 59(e) motion, that the court erred in reaching an "independent" medical diagnosis, which he described as "schizoaffective disorder 'contributing to' his CFS." In reality, the district court found that Kansky's schizoaffective disorder contributed to his disability, and made no finding as to whether the schizoaffective disorder caused or contributed to the CFS or whether CFS contributed to the disability. The court did not abuse its discretion with its insistence that it did not make any independent medical diagnosis.

## B. Request for Sanctions

Kansky claims that the district court erred in denying his request for sanctions against the defendants for an alleged "failure" to produce certain documents. The documents in dispute were produced, although apparently later than Kansky would have liked. He has admitted that he suffered no prejudice from this delay. The district court did not abuse its discretion in denying sanctions. See, e.g., Sullivan v. Raytheon Co., 262 F.3d 41, 52 (1st Cir. 2001).

**IV.**

-12-

We do not minimize the hardships caused by Kansky's medical condition. We recognize the physical, emotional, and financial burdens imposed by that condition. But the entitlement to long-term disability benefits is controlled by contract language and legal standards that we must apply as the law requires. Having done so, we must **<u>affirm</u>** the thorough and carefully reasoned decision of the district court.

**<u>So ordered.</u>**