# United States Court of Appeals
## For the First Circuit

No. 07-2809

FITZROY PRESCOTT,
Plaintiff, Appellant,

v.

DAVID HIGGINS, Individually and in his capacity
as Director of Central Fleet Maintenance, City of Boston
Department of Public Works; CITY OF BOSTON,
Defendants, Appellees,

JERRY COUGHLIN, Individually and in his capacity
as Superintendent of Central Fleet Maintenance,
City of Boston, Department of Public Works,
Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Joseph L. Tauro, U.S. District Judge]

Before
Lynch, Chief Judge,
O'Connor,* Associate Justice (Ret.),
and Torruella, Circuit Judge.

Winston Kendall, for appellant.
Karen A. Glasgow, Senior Assistant Corporation Counsel, City
of Boston Law Department, with whom William F. Sinnott, Corporation
Counsel, was on brief for appellees City of Boston, et al.

August 20, 2008

---

* The Hon. Sandra Day O'Connor, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**TORRUELLA**, **Circuit Judge**. Fitzroy Prescott, an African-American male, is a mechanic for the City of Boston ("the City") who applied for a position as General Foreman for the City's Public Works Department. The selection committee -- made up of two white males, one white female, and one African-American male -- unanimously chose Horace Ryder, a white male. Prescott filed suit against the City, and two city supervisors in their personal and professional capacities (collectively "the Defendants"), under various federal and state laws for racial discrimination, disability discrimination, tortious interference with contract, harassment creating a hostile work environment, and retaliation. Defendants filed for summary judgment, and Prescott cross-motioned for summary judgment. The district court granted the Defendants' motion for summary judgment and denied Prescott's cross-motion. Prescott appealed. After careful consideration, we affirm.

## I.  Background

We recite the facts in the light most favorable to the non-movant, here Prescott. See Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 122 (1st Cir. 2008). Prescott has been a city mechanic since 1984. In June 2002, the City posted a position for General Maintenance Mechanic Foreman, in Central Fleet Maintenance, Boston Public Works. Four city employees were interviewed for the position, including Prescott and Ryder. All four candidates were interviewed by four management-level supervisors in the Public

Works Department: Jerry Coughlin (a white male), Maurice Smith (an African-American male), Kathy Kelley (a white female), and Prescott's supervisor, David Higgins (a white male). The interview focused on three main criteria: job knowledge, education, and experience.

During the interview, applicants were asked seven objective questions regarding the Commercial Motor Vehicle Safety Act Federal Out of Service Criteria, which delineates the federal standards for when vehicles are unsafe to drive. Prescott was unable to correctly answer any of the questions pertaining to the federal guidelines. Ryder answered all of the questions correctly. According to Prescott there were no questions during the interview that focused on education or instruction in the field of mechanics. He claims that there is no evidence that the City considered his performance evaluations. He contends that the interview process only rewarded those who could provide the "right" answers to the questions that were asked, questions he claims had no predictive ability for the likelihood of success as a General Foreman.

The selection committee determined that Prescott and two other white candidates were not qualified for the position. The only committee member who thought that Prescott was qualified for the position was Smith. Smith, however, ranked Prescott third out of the four candidates. The unanimous choice of the interview panel was Ryder. Ryder had ten more years of experience than the

other candidates, and he also had more supervisory and administrative experience than them as well. Ryder had been the Acting General Foreman for six months before he was interviewed, and the panel determined that he had better job knowledge than the other candidates. The panel also determined that Ryder would have the least negative impact on work product because he was the one most familiar with the position.

Prescott filed a complaint with the Massachusetts Committee Against Discrimination ("MCAD") on October 10, 2002, alleging that he did not receive the promotion because of racial discrimination. Prescott does not claim, however, that anyone has ever made, or that he has ever heard, racist or derogatory comments about him or others. He did not make any claims pertaining to disability, retaliation, or lack of accommodation at the time. Prescott claims that he was more qualified than Ryder for the position and points to his nineteen years of experience as a mechanic and six years as a foreman. He also points to numerous certifications he has obtained during his time in the field. Prescott alleges that the City has made unsubstantiated claims that Ryder had supervisory experience. Prescott also alleges that Higgins was not concerned with the backgrounds of African-American employees or their schooling and that he simply did not promote African-American workers.

Prescott contends that the selection criteria used by Higgins resulted in a less than eighty percent success rate for African-American applicants and that the selection criteria have had a disparate impact on African-American applicants.

Prescott also alleges that he was not compensated for serving as Acting General Foreman in 2002 when, Maurice García, the then-General Foreman, was out on sick-leave. The difference in pay was $200 a week. Prescott filed a grievance with the union. Prescott also contends that he was required to work on a computer after he had eye surgery, and he was required to lift ten-pound items, which he was not supposed to do because of his surgery.

MCAD dismissed Prescott's complaint, finding a lack of probable cause. On appeal, the dismissal was affirmed by the MCAD investigation Commissioner. Prescott filed suit in Superior Court in Suffolk County on January 24, 2006, and Defendants removed the case to federal district court on February 10, 2006. On March 6, 2007, the defendants filed for summary judgment, and on March 20, 2007, Prescott filed a cross-motion for summary judgment. On August 27, 2007, the district court granted the Defendants' motion for summary judgment and denied Prescott's cross-motion. The district court also denied Prescott's motion to take judicial notice of facts from a pending case and his motion to alter or amend the judgment. Prescott now appeals.

## II.  Summary Judgment and Cross-Motion for Summary Judgment

### A.  Standard of Review

We review a motion for summary judgment de novo, construing the record in the light most favorable to the non-movant and resolving all reasonable inferences in that party's favor.  See Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008).  We may ignore "conclusory allegations, improbable inferences, and unsupported speculation."  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citing Rossy v. Roche Products, Inc., 880 F.2d 621, 624 (1st Cir. 1989)).  We will reverse only if, "after reviewing the facts and making all inferences in favor of the non-moving party [here, Prescott], the evidence on record is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'"  Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)).

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits."  Thompson, 522 F.3d at 175 (citing Fed. R. Civ P. 56(c)).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  Id. (quoting Sánchez v. Alvarado, 101 F.3d

-6-

223, 227 (1st Cir. 1996)) (internal quotation marks omitted).  "A fact is material if it has the potential of determining the outcome of the litigation."  Maymí, 515 F.3d at 25.  To defeat a motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts."  Pérez v. Volvo Car Corp., 247 F.3d 303, 317 (1st Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

## B.  Discussion

Prescott appeals the district court's grant of summary judgment on discrimination claims for disparate treatment, disparate impact, compensation, hostile work environment, tortious interference with a contract, retaliation, and disability.  He also challenges the district court's denial of his cross-motion for summary judgment.  The familiar McDonnell Douglas framework governs Title VII, 42 U.S.C. § 1981, and Massachusetts General Laws, chapter 151B claims.  See Villanueva v. Wellesley Coll., 930 F.2d 124, 127 & n.2 (1st Cir. 1991).  The problem Prescott faces is that he is unable to meet the prima facie burden that he is required to establish in the first step of McDonnell Douglas.  Accordingly, all his discrimination claims must fail.  We address each of his allegations in turn.

### 1.  Disparate Treatment

A plaintiff makes out a claim of disparate treatment by showing that:  (1) he is a member of a protected class; (2) he was

qualified for the position he sought; (3) he was subjected to adverse employment action; and (4) the position remained open or was filled by someone else with similar qualifications. Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003) (citations omitted). It is undisputed that Prescott is a member of a protected class. For Prescott to survive the motion for summary judgment, then, he needed to present evidence that showed that Ryder's qualifications were similar to his own. See Gu v. Boston Police Dep't, 312 F.3d 6, 11 (1st Cir. 2002). The district court found that he was unable to make that showing. We agree.

Prescott was unable to demonstrate to the satisfaction of the interview panel that he was qualified for the position, and he failed to accurately answer the questions that the panel posed to him during his interview. His answer to several of the questions was that he was "not sure." In contrast, Ryder was able to provide correct answers to each question, and he had ten years more seniority than Prescott.

The district court was not required to consider Prescott's proffer of evidence of pretext because he was unable to get past the second requirement, that he was qualified for the contested position. McDonnell Douglas made clear that a Title VII plaintiff carries the initial burden of establishing a prima facie case. See Oliver v. Digital Equip Corp., 846 F.2d 103, 107 (1st Cir. 1988). Only after Prescott has satisfied his burden of

-8-

showing a prima facie case, and the defendants have proffered a non-discriminatory reason for not promoting him, would we consider any evidence of discriminatory pretext. See Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 30 (1st Cir. 2002). The record clearly indicates that Prescott was not qualified for the position he sought. Prescott was not able to meet his prima facie burden and thus his claim of disparate treatment is legally insufficient.

## 2. Disparate Impact

"'[D]isparate impact' [claims] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977)) (internal quotation marks omitted); accord Bramble v. Am. Postal Workers Union, 135 F.3d 21, 26 (1st Cir. 1998). Prescott alleges that Defendants' hiring practices have a disparate impact on African-Americans because Defendants use selection procedures that result in a less than eighty percent success rate for African-American applicants, as compared with white applicants. While in his disparate impact claim Prescott is not required to show discriminatory motive, see Hazen Paper Co., 507 U.S. at 609, he is required to show proof of a disproportionate impact on that African-Americans.

Prescott has not introduced any evidence of disparate impact in this case. Rather, his appeal hinges on the district court's denial of his motion to take judicial notice of evidence submitted in another case which purports to show disparate impact. We review that evidentiary ruling for abuse of discretion. See United States v. Bello, 194 F.3d 18, 23 (1st Cir. 1999). The validity of the statistics and whether they showed disparate impact was at issue in that case. Therefore, the proof offered was not a "matter beyond reasonable controversy," Fed. R. Evid. 201, advisory committee's note (Note to subdivision (b)), and there was no abuse of discretion.

### 3. Compensation

#### a. Federal Law Claim

To make out a prima facie case of racial discrimination in compensation under Title VII or § 1981, Prescott must show that (1) he is a member of a protected class; (2) he met his employer's expectations; (3) he suffered adverse employment action with respect to compensation; and (4) similarly-situated employees outside the protected class received more favorable treatment. See White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Prescott claims that he was discriminated against in compensation because he was not paid for the weeks when he served as Acting General Foreman while others performing the same work

-10-

received higher compensation. Notwithstanding this claim, the evidence is clear that Prescott has not proven that he met his employer's expectations as an Acting General Foreman. Prescott also fails to meet the fourth prong of the prima facie test because he never put forth any evidence of similarly-situated employees who were given higher compensation. Since he has failed to establish a prima facie case, his claim of disparate compensation also fails.

### b. Massachusetts State Law Claim

In addition to making a complaint under federal law, Prescott also claims that he was discriminated against in compensation under Massachusetts General Laws, chapter 149, §§ 148, 150. Section 148 provides that "[e]very person having employees in his service shall pay . . . such employee the wages earned by him."[1] The purpose of § 148, is to prevent the "unreasonable detention of wages [by employers]." Boston Police Patrolmen's Assoc., Inc., v. City of Boston, 761 N.E.2d 479, 481 (Mass. 2002)

---

[1] Section 150 provides, in relevant part:

Any employee claiming to be aggrieved by a violation of section [§] 148 . . . may, at the expiration of ninety days after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing, and within three years of such violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits.

(citing <u>Am. Mut. Liab. Ins. Co.</u> v. <u>Comm'r of Labor & Indus.</u>, 163 N.E.2d 19, 21 (Mass. 1959)).

Defendants acknowledge that when an employee is appointed to a position on an acting basis, that person is normally paid the wages for the higher position. Though Prescott claims that he served as Acting General Foreman for four months in Maurice García's absence, García's employee attendance calendar clearly demonstrates that García was not away from work for more than two weeks. Kathleen Kelley, the principal personnel officer for the City, checked the City's records and spoke with managers in Central Fleet Maintenance who confirmed this. Serving as Acting General Foreman in a co-worker's absence is not the same as being appointed to the position. Prescott's state law claim fails because he has not demonstrated that he was deprived of wages that he earned.

### 4. Hostile Work Environment

To make out a prima facie case of hostile work environment, a plaintiff must show that (1) he is a member of a protected class; (2) he experienced uninvited harassment; (3) the harassment was racially-based; (4) the harassment was so severe or pervasive as to create an abusive work environment; and (5) the harassment was objectively and subjectively offensive. <u>Cf. Douglas</u> v. <u>J.C. Penney Co.</u>, 474 F.3d 10, 15 (1st Cir. 2007). "Under Massachusetts law, a hostile work environment is one that is 'pervaded by harassment or abuse, with the resulting intimidation,

humiliation, and stigmatization, [such that it] poses a formidable barrier to the full participation of an individual in the workplace.'" Thompson, 522 F.3d at 180 (quoting Cuddyer v. Stop & Shop Supermarket Co., 750 N.E.2d 928, 937 (Mass. 2001)). Prescott has not shown that he was subjected to conduct that was extreme, humiliating, or that unreasonably interfered with his ability to work. See id. ("The environment must be sufficiently hostile or abusive in light of all of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" (quoting Faragher v. City of Boca Ratón, 524 U.S. 775, 787-88 (1998))). In fact, Prescott's own statements undermine his claim of a hostile work environment. He acknowledges that in over twenty years of work for the City, he never heard a single racist remark or joke; he also describes his relationship with his supervisor, Higgins, as "good." Prescott did not put forth any evidence that he was subject to supervisory harassment by any individual that qualifies as a supervisor, i.e., an individual with the authority to hire, fire, or demote. See Noviello v. City of Boston, 398 F.3d 76, 96 (1st Cir. 2005). We therefore must agree with the district court that his hostile work environment claim is without basis.

## 5.  Tortious Interference with Contract

To establish a prima facie case for tortious interference with a contract, Prescott must show that (1) a business relationship existed; (2) a defendant knowingly induced another defendant to break the contract; (3) the defendant's interference was intentional and improper; and (4) he was harmed as a result. See Shea v. Emmanuel Coll., 682 N.E.2d 1348, 1350-51 (Mass. 1997) (citing Wright v. Shriners Hosp. for Crippled Children, 589 N.E.2d 1241, 1245 (Mass. 1992)).  Prescott's argument to the effect that Higgins, or anyone else, tortiously interfered with a contract lacks legal sufficiency.  Though Prescott does not have a cause of action against the City for interfering with its own contract, there could be one against Higgins personally were he to have tortiously interfered with a subordinate's employment relationship. See Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 76 (1st Cir. 2001).  Under this theory, Prescott would have had to show proof of actual malice by Higgins, but Higgins would be "entitled to a qualified privilege in an employment-based tortious interference case (and, thus, will not be liable for employment decisions that are within the scope of his supervisory duties)." Id.  Prescott would have to establish that "malice was the controlling factor in the supervisor's interference." Id. (citing Alba v. Sampson, 690 N.E.2d 1240, 1243 (Mass. 1998)).  There is nothing in the record to support a claim for malice.  Prescott has

-14-

thus failed to make out a prima facie case for tortious interference with a contract, and this claim fails as well.

## 6. Retaliation

A prima facie case for retaliation is established if Prescott shows that (1) he engaged in protected conduct; (2) he was subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct. See Noviello, 398 F.3d at 88. "For a retaliation claim to survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." Thompson, 522 F.3d at 181 (citation and quotation marks omitted). Prescott's retaliation claim suffers the same fate as his other claims. Prescott fails to establish a prima facie case because he does not identify the protected conduct that he supposedly engaged in. We are thus not required to go further. Nevertheless, as previously stated, Defendants have convincingly established that Prescott was not selected for the position because he was not qualified. Thus, his claim for retaliatory conduct fails.

## 7. Disability

Prescott argues that the defendants engaged in disability discrimination and harassment against him because they forced him to do work reading a computer screen right after he had eye surgery

and required him to lift heavy objects when he had a note saying that he should not do any heavy lifting.

### a. Rehabilitation Act Claim

Although the district court dismissed Prescott's disability claims because he did not exhaust administrative remedies under the Rehabilitation Act, 29 U.S.C. § 791, exhaustion is not required under the Act.  See Brennan v. King, 139 F.3d 258, 268 n.12 (1st Cir. 1998).  Nevertheless, Prescott's disability claim was in any event subject to dismissal because he is not disabled within the meaning of the Act.  See 29 U.S.C. § 705(20)(B); Tardie v. Rehab. Hosp. of R.I., 168 F.3d 538, 542 (1st Cir. 1999) ("In any claim under the Rehabilitation Act, the plaintiff must first establish that she has a disability covered by the Act." (citing Leary v. Dalton, 58 F.3d 748, 752 (1st Cir. 1995))). Prescott does not qualify as having a disability because he does not have a permanent or long-term disability that substantially affects one or more of his major life activities, a requirement under § 705.  See Rolland v. Potter, 492 F.3d 45, 47-48 (1st Cir. 2007).  We have specifically addressed the issue of lifting limitations and held that limitations on lifting, without more, are not a substantial limitation on a major life activity.  See Gillen, 283 F.3d at 22 ("[I]f a restriction on heavy lifting were considered a substantial limitation on a major life activity, then the ranks of the disabled would swell to include infants, the

-16-

elderly, the weak, and the out-of-shape."). Furthermore, as to his vision problems, Prescott does not assert that they were long-term or permanent, and, in fact, he stated that they were resolved after surgery. The record shows that he was not required to work on a computer until after his vision improved. Consequently, Prescott's disability claim fails for lack of a legal basis.

### b. Massachusetts State Law Claim

Prescott's disability claims under Massachusetts state law were dismissed by the district court on procedural grounds because Prescott's disability claim is not reasonably related to a racial discrimination claim. Regardless of whether or not Prescott exhausted his claim, he does not meet the definition of "handicap" under chapter 151B.[2] See Dahill v. Police Dep't of Boston, 748 N.E.2d 956, 963-64 (Mass. 2001).

Prescott must demonstrate that he is "handicapped" within the meaning of chapter 151B by satisfying a three-step analysis: we must determine (1) "whether a plaintiff's condition, actual or perceived, constitutes a mental or physical 'impairment'"; (2) "whether the life activity curtailed constitutes a 'major' life activity as defined in G.L. c. 151B, § 1(20), and its accompanying

---

[2] Under Massachusetts law, "handicap" is defined as "a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment." Mass. Gen. Laws ch. 151B, § 1(17). A "handicapped person" is defined as any person who has a "handicap" under that statutory definition. Id. § 1(19).

regulations"; (3) "whether the impairment <u>substantially limited the major life activity</u>." <u>City of New Bedford</u> v. <u>Mass. Comm'n Against Discrimination</u>, 799 N.E.2d 578, 588-89 (Mass. 2003). To meet his burden, Prescott must do more than submit evidence that he was diagnosed with an impairment. <u>See</u> <u>id.</u> at 589. "Rather, those seeking [G.L. c. 151B] protection must offer evidence that 'the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'" <u>Id.</u> (quoting <u>Carroll</u> v. <u>Xerox Corp.</u>, 294 F.3d 231, 238 (1st Cir. 2002)). Prescott has offered no such evidence, and he is, therefore, not handicapped within the meaning of chapter 151B. There is no information in the record that he has a permanent or long-term disability that substantially affects one or more of his major life activities. Even though "working" is a major life activity under Massachusetts law, Prescott has not demonstrated that he was "substantially limited" in his ability to work. His claims under Massachusetts state law fail.

### 8. Cross-Motion for Summary Judgment

Prescott's cross-motion does not prosper for the same reasons that the City's motions were granted; Prescott has failed to establish a prima facie case for any of his contentions.

### III. Motion to Alter or Amend the Judgment

After the district court granted summary judgment to the Defendants and denied Prescott's cross-motion for summary judgment,

Prescott moved to alter the judgment under Federal Rule of Civil Procedure 59(e). The district court denied the motion.

We review the district court's denial of a Rule 59(e) motion for abuse of discretion. See Kansky v. Coca-Cola Bottling Co. of New Eng., 492 F.3d 54, 60 (1st Cir. 2007). "Rule 59(e) motions are granted only where the movant shows a manifest error of law or newly discovered evidence." Id. (citing Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005)).

Prescott points to no manifest error of law or newly discovered evidence. He merely restates the same arguments that he made in his opposition to summary judgment and in his cross-motion for summary judgment. "The repetition of previous arguments is not sufficient to prevail on a Rule 59(e) motion." United States v. $23,000 in U.S. Currency, 356 F.3d 157, 165 n.9 (1st Cir. 2004) (citing FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992)). Accordingly, the district court did not abuse its discretion when it denied the motion.

## IV. Conclusion

For the reasons stated above, we affirm the grant of summary judgment for the Defendants, the denial of Prescott's cross-motion for summary judgment, and the denial of the motion to alter or amend the judgment.

**Affirmed**.

-19-