# United States Court of Appeals

## For the First Circuit

No. 06-2536

GLEN P. ROLLAND,

Plaintiff, Appellant,

v.

JOHN E. POTTER, Postmaster General of the
United States Postal Service,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

(Hon. Michael A. Ponsor, U.S. District Judge)

Before

Torruella and Lipez, Circuit Judges,
and Stafford,* Senior District Judge.

Mary-Ann L. Lane, with whom Lane Law Offices, was on brief,
for appellant.
Karen L. Goodwin, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

June 28, ,2007

---

*Of the Northern District of Florida, sitting by designation.

**STAFFORD**, **Senior District Judge**. Appellant, Glen P. Rolland ("Rolland"), an employee of the United States Postal Service ("USPS"), appeals from the district court's award of summary judgment to John E. Potter ("Potter"), Postmaster General of the USPS. We AFFIRM.

## I.

On March 19, 1994, while working as a forklift driver at the USPS Bulk Mail Center in Springfield, Massachusetts, Rolland suffered an on-the-job injury that resulted in a ruptured intervertebral disc at L4-L5. Following surgery and a period of recovery, Rolland returned to his job as a forklift driver in late June, 1994. Not long thereafter, having continued to experience substantial pain and limitation of movement, Rolland was temporarily reassigned to a light-duty position as a forklift operator's assistant.

In 1997, following an extensive medical review of Rolland's injury and condition, the USPS offered Rolland a permanent "rehabilitation position" as a modified mail handler. Awarded through the USPS's workers' compensation program, a "rehabilitation position" is one that the USPS provides to an employee who has permanent restrictions resulting from an on-the-job injury. Rolland accepted the USPS's offer of the rehabilitation position, and he has continued in that "rehab" position—the modified mail handler position—since 1997.

On June 14, 2002, Rolland filed a formal charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). Among other things, Rolland alleged that the USPS had discriminated against him in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-795, by denying him overtime hours based on his status as a "rehab" employee. An EEOC Administrative Judge ("AJ") denied Rolland's claim for relief, finding that Rolland failed to establish a cognizable claim under the Rehabilitation Act. On appeal to the EEOC, the AJ's decision was affirmed. Rolland thereafter filed this disability discrimination action in federal district court.

In his federal complaint, Rolland again asserted a claim under the Rehabilitation Act, alleging that he was a qualified individual with a disability who was denied overtime work on the basis of that disability. Potter sought summary judgment, arguing—among other things—that Rolland was not entitled to relief because he did not have a disability within the meaning of the Rehabilitation Act. As noted by Potter, Rolland admitted during depositions that he can (1) drive himself to work; (2) lift sacks weighing up to twenty pounds; (3) mow the lawn; (4) prepare meals; (5) do laundry; (6) clear snow with a snow blower; (7) stand for long hours; (8) take extended walks while wearing a knee brace; and (9) perform all of the duties assigned to him as part of his "rehab" job. In response to Potter's motion for summary judgment,

Rolland argued that, because the USPS had determined that he was disabled for purposes of assigning him to a rehabilitation position, the agency was estopped from arguing otherwise for purposes of Rolland's Rehabilitation Act claim.

The district court granted Potter's motion for summary judgment, in part finding that Rolland failed to present evidence establishing that he had a disability for purposes of his Rehabilitation Act claim. The district court rejected Rolland's assertion that his eligibility to participate in the USPS's rehabilitation program constituted, by itself, sufficient proof of a qualifying disability. Rolland thereafter filed this timely appeal, raising only one issue: whether the district court erred in finding that Rolland failed to establish that he was disabled for purposes of the Rehabilitation Act.

II.

We review the district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-movant. Gomez-Perez v. Potter, 476 F.3d 54, 56-57 (1st Cir. 2007).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity . . . conducted by . . . the United

States Postal Service." 29 U.S.C. § 794(a). Section 705(20) defines an "individual with a disability" as "any person who . . . has a physical or mental impairment which substantially limits one or more of such person's major life activities" or "has a record of such an impairment" or "is regarded as having such an impairment." Id. § 705(20)(B).

In Toyota Motor Manufacturing, Inc. v. Williams, 534 U.S. 184 (2002),[1] the Supreme Court explained that the phrases "substantially limits" and "major life activities" must be strictly interpreted "to create a *demanding* standard for qualifying as disabled." Id. at 197 (emphasis added).[2] The Court emphasized

---

[1] In Toyota, the plaintiff sued her former employer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, not the Rehabilitation Act. The Supreme Court made clear, however, that the phrase "individual with a disability" is defined in substantially the same manner in both statutes and should, therefore, be given the same construction under both statutes. Toyota, 534 U.S. at 194 (noting that Congress drew the ADA's definition of disability almost verbatim from the Rehabilitation Act).

[2] The relevant caselaw reveals that the disability standard imposed by courts under the Rehabilitation Act has, indeed, been demanding. See, e.g., Helfter v. United Parcel Serv., 115 F.3d 613, 617 (8th Cir. 1997) (concluding that a mail sorter whose on-the-job injuries resulted in permanent medical restrictions, including not only a lift limit of ten pounds frequently and twenty pounds occasionally but also a restriction as to sustained, highly repetitive activities using either hand, failed to show that she was disabled within the meaning of federal disability-discrimination laws); Carter v. Potter, No. 02-7326, 2004 WL 2958428, at *4 (E.D. Pa. Dec. 21, 2004) (holding that a postal worker whose arthritis altogether prevented him from performing his duties as a letter carrier did not establish that he had a "disability" that substantially impaired his ability to engage in a major life activity).

-5-

that, because the word "major" means "important," the phrase "major life activities" refers to those activities "that are of central importance to daily life." Id. The Court further emphasized that, because the word "substantially" suggests "considerable" or "to a large degree," the phrase "substantially limits" disqualifies as "disabilities" any impairments that interfere in only a minor way with an individual's major life activities. Id. at 196-97. In sum, the Court held that, to qualify as a disabled person under the Rehabilitation Act, an individual must have a permanent or long term impairment "that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id. at 198.

The determination of whether a plaintiff has a qualifying disability is made on a case-by-case basis. Id. To establish a qualifying disability, the plaintiff has the burden of proving (1) that he or she suffers a physical or mental impairment; (2) that the "life activity" limited by the impairment qualifies as "major;" and (3) that the limit imposed on the plaintiff's major life activity is substantial. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 20 (1st Cir. 2004).

Here, Rolland's medical condition is described in the record as including a ruptured L4-L5 disc, sciatica, radiculopathy, and atrophy of both the thigh and calf muscles of his right leg. It is undisputed that he has an impairment. The issue, then, is

-6-

whether his impairment rises to the level of one that "substantially limits one or more of . . . [his] major life activities."

Rolland made little effort before the district court to establish that his impairment substantially limits one or more of his major life activities. Instead, citing no authority whatsoever, he argued that his status as a disabled individual was conclusively evidenced by his placement in a USPS rehabilitation position. In essence, he argued that the USPS was estopped from collaterally attacking its own disability determination.

The Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193, establishes a federal workers' compensation program for employees who suffer a "disability" as a result of an on-the-job injury. Eschewing the Rehabilitation Act's more demanding definition of the term "disability," Congress defined the term "disability" for workers' compensation purposes as the "incapacity, because of an employment injury, to earn the wages the employee was receiving at the time of the injury." 20 C.F.R. § 10.5(f).

Among other things, FECA requires federal agencies to place employees in their former positions, or in equivalent positions, following recovery from compensable injuries. 5 U.S.C. § 8151. To fulfill its FECA obligations to employees who suffer compensable injuries, the USPS developed an injury compensation program that specifically addresses the reassignment of employees

injured on the job. Under this program, employees whose on-the-job injuries result in permanent restrictions are placed into new rehabilitation positions through the USPS's Rehabilitation Program. To be eligible for participation in the Rehabilitation Program and, thereby, for placement in a rehabilitation position, an employee must "have a job-related, permanent partial disability documented by medical evidence." United States Postal Service Handbook EL-505. The record does not reveal how the USPS defines "permanent partial disability" for purposes of its injury compensation program.[3]

Rolland was found to be eligible for the USPS's Rehabilitation Program because the medical evidence established that he had a job-related "permanent partial disability." Based on the record before it, the district court rejected Rolland's lone and unsupported argument that the USPS's finding of "disability" for purposes of its worker's compensation program was the equivalent of a "disability" finding for purposes of the

---

[3] In his reply brief, Rolland suggests—for the first time and without proper citation—that the USPS defines the word "disability" for purposes of its injury compensation program exactly as the word is defined in the Rehabilitation Act. We do not consider, however, arguments left unsaid in the district court and raised for the first time on appeal in a reply brief. See Sandstrom v. Chemlawn Corp., 904 F.2d 83, 87 (1st Cir.1990) (noting that an argument which is "coherently pulled together for the first time in [a party's] reply brief in [the court of appeals] is procedurally defaulted" and will not be considered); see also McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 21 (1st Cir. 1991) (explaining that "[i]t is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal").

Rehabilitation Act. The district court did not err in this regard.

According to Rolland, the district court failed to address the fundamental issue of whether or not Rolland had an impairment. That issue, however, was undisputed and needed no elaboration by the district court. Rolland also suggests that the district court erroneously limited its analysis to only one prong of the "disability" definition (whether Rolland's impairment substantially limited one or more of his major life activities), altogether ignoring the other two prongs of the definition (whether there was a record of such an impairment and/or whether Rolland was regarded as having such an impairment). Interestingly, Rolland himself failed to address the latter two prongs of the definition before the district court. For that reason alone we decline to find error in the district court's failure to specifically analyze each of the definition's three prongs. On appeal, moreover, Rolland makes clear that he again relies on his rehabilitation position, and the records supporting his placement in such a position, to argue both that he was "regarded" as a disabled employee and that there was a record of his disability. Such reliance, directed to the second and third prongs of the definition, is just as unpersuasive as the district court found it to be regarding the first prong of the definition.

Finally, Rolland maintains that the district court erred by discounting the evidence—both the medical records and his own

deposition testimony—regarding how his limitations affected his ability to engage in various major life activities. To be sure, the district court said little more than that "the discovery in this case . . . strongly tends to negate, with no substantial contradiction, any claim by Plaintiff that he is, in fact, disabled as the Rehabilitation Act defines that term." Dist. Ct. Order at 3-4.

Though its explanation was brief, we find that the district court's assessment of the evidence was not erroneous. Indeed, the evidence before the district court demonstrated that, despite his impairments and to his credit, Rolland is not only able to perform all of the duties assigned to him during regular work hours but he is also able to work substantial overtime hours. While the record revealed that he has difficulty bending, stooping, twisting, and sitting for extended periods, it also revealed that he can mow his yard, vacuum occasionally, load the dishwasher, walk, lift up to twenty pounds, blow snow, and do laundry. Given the exacting standard for determining what constitutes a qualifying disability under the Rehabilitation Act, and given the limited nature of the evidence and argument presented to the district court by Rolland, we agree with the district court that Rolland failed to present sufficient evidence of a "disability" to survive Potter's motion for summary judgment.

III.

For the reasons explained above, we AFFIRM the district court's judgment.