# United States Court of Appeals
## For the First Circuit

No. 11-1477

MARILYN MCDONOUGH,

Plaintiff, Appellant,

v.

PATRICK R. DONAHOE, POSTMASTER GENERAL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, Magistrate Judge]

Before

Boudin, Howard, and Thompson,
Circuit Judges.

Mitchell J. Notis for appellant.
Christine J. Wichers, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

March 14, 2012

**THOMPSON, <u>Circuit Judge</u>.** Plaintiff-appellant Marilyn McDonough ("McDonough") appeals the district court's grant of summary judgment in favor of her employer on her disability based hostile work environment claim under the Rehabilitation Act, 29 U.S.C. § 794(a). Discerning no error, we affirm the judgement of the district court.

## I. BACKGROUND

McDonough began working for the United States Postal Service ("Postal Service") as a letter carrier at the Haverhill, Massachusetts post office in September of 1980.[1] In 1987, she tripped over a basket of magazines while at work and injured her back, thereafter causing her to suffer from "chronic orthopedic problems in her neck and back," as well as "related symptoms."[2] After this accident, she filed for worker's compensation. Her claim was allowed and she began to work four hours a day instead of eight -- two hours sorting mail and two hours delivering mail. Though her hours changed from time to time, she typically worked 8 am to noon with the Postal Service paying her worker's compensation benefits to make up for the remaining four hours of the work day.

---

[1] At the time the parties filed their briefs to this court, over the summer of 2011, McDonough was still employed by the Postal Service.

[2] During her deposition, McDonough stated that the fall and "twisting" that resulted from her tripping over the magazines caused the injury to her back; however, she could not say what caused the injury to her neck or when she first started to have neck pain.

Despite her back injury, McDonough was nonetheless able to get up and about. She could walk, sit, and stand for up to one hour continuously or up to four hours intermittently. In fact, she acknowledged that the walking required to deliver the mail was good for her health. She could also lift ten pounds continuously or twenty pounds intermittently, though she was "not nit picky" about how much weight she could lift or even "really thought about" it much. McDonough drove herself to work everyday -- approximately forty-five minutes each way. She was able to go up and down the stairs in her two-story house and she did not need help getting herself ready each morning. Her back injury also did not keep her from being able to do typical, everyday housework -- she was able to vacuum, do laundry, load the dishwasher, mow, bake, and garden. For exercise, she liked to walk to a nearby lake and go to a local gym a couple of times a week for water walking therapy.

While at work, McDonough had access to a stool so she could rest her knee while sorting through the mail. She was also given a cart to carry her mail, instead of the customary requirement of using a satchel. Additionally, she only had to carry part of her mail load in her cart -- the rest was delivered by a co-worker to a locked "relay box" for McDonough to pick up along her route. From what we can tell, all was well between McDonough and her employer until one fateful day in January of 2004.

-3-

Because McDonough was receiving worker's compensation, she needed to have regular medical examinations. On July 23, 2003, she was examined by Dr. Leonard Popowitz, a physician retained by the Postal Service. According to Dr. Popowitz's report, McDonough could work "four to five hours a day." In response to this new information, the Haverhill Postmaster, Richard Pace ("Pace"), prepared an "Offer of Modified Assignment (Limited Duty)" proposing that McDonough work up to five hours a day, instead of four. On January 30, 2004, Pace discussed the offer with McDonough. According to McDonough, though he never blocked the door, Pace nevertheless tried to bully her into signing the offer by not allowing her to leave his office until she signed. McDonough never did sign the offer and continued to work four hour days.

Approximately a year later, McDonough contacted the Equal Employment Opportunity Commission ("EEOC") and spoke to an Equal Employment Opportunity ("EEO") counselor to report the incident with Pace and the modified job offer. On July 19, 2005, the EEO counselor sent McDonough a notice giving her the right to file an administrative complaint. She did so, alleging five instances of disability based harassment constituting a hostile work environment. After receiving a seven-day paper suspension[3] in

---

[3]The paper suspension was a form of progressive discipline, but it did not result in the loss of work or pay to McDonough. Although the suspension brought her one step closer to termination, under the terms of the collective bargaining agreement disciplinary notices are removed from the employee's file after two years, as

August of 2005 for exhibiting unacceptable conduct, McDonough amended her complaint to add this event. All six incidents were investigated by the EEOC.

In November of 2005, the EEO investigator notified McDonough that his investigation was complete. He gave her a copy of the report[4] and informed her that she had the right to request a hearing before an Administrative Law Judge ("ALJ"), which she did. Before the hearing, McDonough moved to amend her complaint in order to add two additional incidents. Over the Postal Service's objection, the ALJ allowed the motion. After discovery was complete, the Postal Service filed a pre-hearing motion for summary judgment, and the ALJ granted the motion on August 3, 2006. Five days later the Postal Service issued a final agency decision adopting the ALJ's decision. McDonough appealed to the EEOC's Office of Federal Operations ("OFO"), which affirmed. She sought reconsideration but the OFO denied her request.

Thereafter, on December 22, 2008, McDonough filed suit in federal district court against the Postmaster General of the United States, John E. Potter, in his official capacity as the most senior manager of the Postal Service.[5] In her complaint, McDonough

---

long as there has been no further disciplinary action.

[4]We are unable to discern from the record before us the EEO investigator's actual findings.

[5]By letter dated May 23, 2011, counsel for the defendant notified the Clerk of the Court that John Potter had retired and

alleged five claims: (1) hostile work environment harassment based on her disability in violation of the Rehabilitation Act, 29 U.S.C. § 794(a); (2) retaliation in violation of the Rehabilitation Act; (3) failure to accommodate a disability in violation of the Rehabilitation Act; (4) hostile work environment harassment based on gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16; and (5) retaliation in violation of Title VII.[6]

The parties agreed to proceed before a magistrate judge. On September 15, 2010, after discovery was completed, the Postmaster General filed a motion for summary judgment. In her opposition to summary judgment, McDonough abandoned all of her claims except for the harassment and retaliation claims under the Rehabilitation Act.

Oral argument was heard on March 30, 2011 and the next day, the judge entered summary judgment for the Postmaster General on all claims. This appeal followed.[7]

---

that his replacement was Patrick R. Donahoe. By order of the court, on May 25, 2011, Patrick R. Donahoe was substituted for John Potter pursuant to Federal Rule of Appellate Procedure 43(c)(2).

[6]All five claims alleged were based on events that occurred between 2004 and 2005.

[7]McDonough only appeals the district court's entry of summary judgment for the defendant in regard to her harassment claim.

**II. Discussion**

1. Standard of Review

"We review a district court's grant of summary judgment de novo." Ahern v. Shinseki, 629 F.3d 49, 53 (1st Cir. 2010) (citation omitted). In so doing, the record is construed "in the light most favorable to the non-movant and [we] resolv[e] all reasonable inferences in that party's favor." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). Nonetheless, "[w]e may ignore conclusory allegations, improbable inferences, and unsupported speculation." Id. (internal quotation marks omitted). "We will affirm only if the record reveals 'no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" Vineberg v. Bissonnette, 548 F.3d 50, 55 (1st Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

2. Hostile Work Environment Claim under the Rehabilitation Act

Pursuant to the Rehabilitation Act, "'[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity . . . conducted by . . . the United States Postal Service.'" Rolland v. Potter, 492 F.3d 45, 47 (1st Cir. 2007) (quoting 29 U.S.C. § 794(a)). McDonough argues "that

she was subjected to a hostile work environment due to her disability."[8]

In order to succeed on her hostile work environment claim McDonough must show the following: (1) she was disabled as defined under the Rehabilitation Act, (2) she was subjected to uninvited harassment, (3) her employer's conduct was based on her disability, (4) the conduct was so severe or pervasive that it altered the conditions of her work and created an abusive work environment, and (5) the harassment was objectively and subjectively offensive.[9] See Prescott, 538 F.3d at 42; see also Ríos-Jiménez v. Principi, 520 F.3d 31, 43 (1st Cir. 2008). Based on the record before us, we find that McDonough has failed to clear the first hurdle.

"[A]n 'individual with a disability' [is defined] as 'any person who . . . has a physical or mental impairment which substantially limits one or more of such person's major life activities' or 'has a record of such impairment' or 'is regarded as

---

[8]McDonough rests her hostile work environment claim on eight different events that occurred between 2004 and 2005. Because those eight events have no bearing on the final outcome, we need not discuss the specifics.

[9]In Quiles-Quiles v. Henderson, 439 F.3d 1 (1st Cir. 2006), we noted that this court had not yet decided whether disability harassment was a "viable theory of recovery" but nonetheless assumed that it was. Id. at 5 n.1. To date, this court still has not directly addressed the issue. For purposes of this opinion, we follow Quiles-Quiles and assume without deciding that disability harassment is a viable theory of recovery.

having such an impairment.'"[10] Rolland, 492 F.3d at 47 (quoting 29 U.S.C. § 705(20)(B)). To qualify as "disabled" under the Rehabilitation Act's first disability definition, "[w]e apply a three-part analysis." Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 187-188 (1st Cir. 2011). First, the plaintiff must establish that she suffers from an impairment. Next, the plaintiff must show that the impairment affects a major life activity, and third, that the impairment substantially limits the major life activity[11]. Id.; see also Rolland, 492 F.3d at 48 (same). The "phrases 'substantially limits' and 'major life activities' must be strictly interpreted 'to create a demanding standard for qualifying as disabled.'" Rolland, 492 F.3d at 47 (quoting Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002)) (emphasis in original). In order to qualify, "an individual must have a permanent or long term impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id. at 47-48 (internal

---

[10]McDonough also alleges that the Postal Service regarded her as having such an impairment. We discuss this claim later. See discussion infra, pp. 13-15. She does not, however, argue that she has a record of such an impairment.

[11]In Ramos-Echevarría, the plaintiff brought suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, not the Rehabilitation Act. 659 F.3d at 185. However, the phrase "individual with a disability" is defined similarly in both statutes and the Supreme Court has held that the phrase should be given the same construction under both statutes. See Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 193-94 (2002).

quotation marks omitted).  The determination of disability is made on a case-by-case basis.  Id. at 48.

McDonough argues that she actually has an impairment -- back and neck pain -- that substantially limits five major life activities: working, walking, standing, sitting, and lifting.  We think the record before us is devoid of any evidence supporting this contention.

First, McDonough has not pointed us to any evidence to establish that she was substantially limited in the major life activity of working.  "Working can be considered a major life activity."  Ramos-Echevarría, 659 F.3d at 188.  Nonetheless, despite her back and neck pain, McDonough was able to do her job satisfactorily with the accommodations provided by the Postal Service, specifically, a four-hour work day, a stool to rest her knee on while she sorted the mail, and a cart instead of a satchel to help her deliver the mail.  See, e.g., Whitlock v. Mac-Gray, Inc., 345 F.3d 44, 46 (1st Cir. 2003) (holding that plaintiff could not show that he was disabled because he conceded that he could do his job despite his impairment); see also Mays v. Principi, 301 F.3d 866, 869 (7th Cir. 2002) ("The number of Americans restricted by back problems to light work is legion.  They are not disabled.").

Likewise, McDonough has failed to produce evidence to show that she was substantially limited in the major life activity

of walking. Walking is considered a major life activity. See 29 C.F.R. § 1630.2(i) (2011). However, it is undisputed that McDonough could walk continuously for one hour a day and intermittently for four hours a day. Moreover, McDonough spent two hours a day delivering mail, walking fifteen to twenty minutes non-stop. She also walked up and down the stairs in her home. For exercise, she would walk to a nearby lake and she even went to the gym a couple of times each week to take part in a water walking therapy class. As a matter of law, this evidence does not support McDonough's disability claim. See, e.g., Neal v. Kraft Foods Global, Inc., 379 F. App'x 632, 634 (9th Cir. 2010) (holding that evidence that plaintiff could walk only four hours a day was insufficient, as a matter of law, to prove that she was disabled); see also Turner v. The Saloon, Ltd., 595 F.3d 679, 689 (7th Cir. 2010) (stating that "walking with difficulty is not a significant restriction on walking").

Neither has McDonough produced evidence to support her contention that she was substantially limited in her ability to stand.[12] It is undisputed that she could stand for one hour a day

_____

[12]We have not had occasion to decide whether standing is a major life activity. We have, however, at least hinted that it should be considered as such. See, e.g., Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 21 (1st Cir. 2002) (stating that EEOC's definition of "major life activites" was not "all-encompassing" and that the EEOC "emphasized that point by adding sitting, standing, reaching, and lifting to the roster of likely major like activities") (citation omitted). For purposes of this opinion, we assume without deciding that standing is a major life

and intermittently for four hours a day.  She was also able to perform all of the following activities, each of which involves standing: vacuuming, doing laundry, putting dishes in the dishwasher, mowing, baking, and gardening. Consequently, we cannot agree with McDonough's claim that she was substantially limited in her ability to stand and therefore, disabled.  See, e.g., Neal, 379 F. App'x at 634 (holding that plaintiff's inability to stand more than two hours was insufficient, as a matter of law, to prove that she was disabled); see also Dupre v. Charter Behavioral Health Sys. of Lafayette Inc., 242 F.3d 610, 614 (5th Cir. 2001) (holding that plaintiff's inability to stand for more than one hour did not render her disabled).

Likewise, though McDonough claims that she was substantially limited in her ability to sit, the record suggests otherwise.[13]  Indeed, McDonough sat in her car for one and a half hours every weekday, driving forty-five minutes each way to and from work.  She was also able to crochet and garden -- activities which undoubtedly require some form of sitting.  Accordingly, the record does not support McDonough's claim that she was substantially limited in her ability to sit.

activity.

[13]We assume for purposes of this opinion that sitting constitutes a major life activity.  See supra note 12.

This brings us to the final major life activity that McDonough claims to be substantially limited in -- lifting. Unfortunately for McDonough, this final argument fares no better than the other four. According to her own doctor's restrictions, McDonough could lift ten pounds continuously and twenty pounds intermittently. In addition, she concedes that even with this lifting restriction she "never really thought about" how much she could lift. This court has "specifically addressed the issue of lifting limitations and held that limitations on lifting, without more, are not a substantial limitation on a major life activity." Prescott, 538 F.3d at 44 (citing Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 22 (1st Cir. 2002) ("[I]f a restriction on heavy lifting were considered a substantial limitation on a major life activity, then the ranks of the disabled would swell to include infants, the elderly, the weak, and the out-of-shape.")).

In sum, and taking the evidence in the light most favorable to McDonough, she has not proven disability in that she has failed to show that her impairment caused her to be substantially limited in any major life activity.

Alternatively, McDonough claims disability alleging that her employer regarded her as disabled. "The regarded as prong of the [Rehabilitation Act] exists to cover those cases in which myths, fears, and stereotypes affect the employer's treatment of an individual." Ruiz Rivera v. Phizer Pharm., LLC, 521 F.3d 76, 82

-13-

(1st Cir. 2008) (internal quotation marks omitted).  "A plaintiff claiming that [s]he is 'regarded' as disabled cannot merely show that h[er] employer perceived h[er] as <u>somehow</u> disabled; rather, [s]he must prove that the employer regarded h[er] as disabled <u>within the meaning of the [Rehabilitation Act]</u>."  <u>Bailey</u> v. <u>Georgia-Pacific Corp.</u>, 306 F.3d 1162, 1169 (1st Cir. 2002).  In other words, McDonough must show that the Postal Service thought her neck and back impairment substantially limited one or more of her major life activities.  <u>See</u> 29 U.S.C. § 705 (20)(B).  Moreover, "[w]hen 'working' is the major life activity at issue, a plaintiff must demonstrate not only that the employer thought that [s]he was impaired in [her] ability to do the job that [s]he held, but also that the employer regarded [her] as substantially impaired in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities."  <u>Ruiz Rivera</u>, 521 F.3d at 83 (internal quotation marks omitted).

McDonough argues that the Postal Service regarded her as disabled because she received worker's compensation benefits and worked four-hour days.[14]  We disagree.

---

[14]She also claims that the Postal Service regarded her as disabled because "her work [was] structured around her lifting limitations" and because "a number of the incidents of harassment . . . relate to [her] medical condition."  McDonough fails to reference any legal authority whatsoever to support these claims. Instead, she merely offers conclusory, undeveloped arguments. Consequently, we find these arguments waived.  <u>See</u> <u>P.R. Tel. Co.</u>,

Pursuant to the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193, a federal worker's compensation program is available for employees who suffer from a "disability" stemming from an on-the-job injury. Under FECA, "disability" is defined as "incapacity, because of an employment injury, to earn the wages the employee was receiving at the time of the injury." 20 C.F.R. § 10.5(f). We have acknowledged that this definition of disability -- for worker's compensation benefits purposes -- is much less exacting than the definition of "disability" under the Rehabilitation Act. See Rolland, 492 F.3d at 47-8. Thus, the fact alone that McDonough was receiving worker's compensation benefits does not prove that her employer regarded her as disabled.

Similarly, McDonough's four-hour work day fails to prove that the Postal Service regarded her as disabled. Instead, it supports the conclusion that the Postal Service found that despite her neck and back impairment, McDonough could do her job with the accommodations provided -- reduced work day, a stool to rest her knee while sorting the mail, and a cart to carry her mail, instead of a satchel. In fact, the record indicates that the Postal Service thought McDonough could do more, (i.e., work up to five

Inc. v. SprintCom, Inc., 662 F.3d 74, 99-100 (1st Cir. 2011) (finding argument waived on appeal because party "made no attempt at developed argumentation") (citation omitted); see also Brown v. Trs. of Boston Univ., 891 F.2d 337, 352 (1st Cir. 1989) (issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived).

hours a day), not less, despite her impairment.  When all is said and done, the record before us establishes that McDonough was able to do her job; she was merely limited in her ability to do it full-time.  Consequently, McDonough has failed to show that the Postal Service regarded her as disabled.

This brings us to the end of our discussion.  Because the first step in any claim under the Rehabilitation Act is establishing a disability covered by the Act and McDonough has failed to show that she was disabled, her hostile work environment claim must fail.  See Tardie v. Rehab. Hosp. of R.I., 168 F.3d 538, 542 (1st Cir. 1999) ("In any claim under the Rehabilitation Act, the plaintiff must first establish that she has a disability covered by the Act.").  There was no error.

## III.  CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment for the defendant.