Eliezer CRUZ–APONTE,
et al., Plaintiffs,

v.

CARIBBEAN PETROLEUM CORPORATION, et al.,
Defendants.

Civil No. 09–2092 (FAB).

United States District Court,
D. Puerto Rico.

Jan. 24, 2013.

John F. Nevares, John F. Nevares & Assoc. PSC, San Juan, PR, Matthew S. Schoen, Michael A. London, Nicholas E. Warywoda, Douglas and London, P.C., New York, NY, PHV Peter J. Cambs, Parker Waichman Alonso LLP, Port Washington, NY, Daniel E. Becnel, Jr., Becnel Law Firm, L.L.C., Reserve, LA, for Plaintiffs.

Francisco G. Bruno–Rovira, Myrna L. Ruiz–Olmo, Raul M. Arias–Marxuach, McConnell Valdes, Eric Perez–Ochoa, Adsuar Muniz Goyco Seda & Perez Ochoa PSC, James W. McCartney, Cancio, Nadal, Rivera & Diaz, Nestor Mendez–Gomez, Jason R. Aguilo–Suro, Oreste Ricardo Ramos–Pruetzel, Sara L. Velez–Santiago, Pietrantoni Mendez & Alvarez, Diego A. Ramos, Fiddler Gonzalez & Rodriguez, P.S.C., Kevin M. Acevedo–Carlson, San Juan, PR, Mark PHV Blumstein, The Blumstein Law Firm, Aventura, FL, William A. Escobar, Ana Y. Correa, Jonathan Cooperman, Kelley Drye & Warren, LLP, Kevin M. Haas, Cozen O'Connor, Matthew J. Sava, Robert W. Forman, Stuart L. Shapiro, Shapiro Forman Allen & Sava LLP, New York, NY, Thomas M. Jones, Cozen O'Connor, Seattle, WA, Eduardo A. Vera–Ramirez, Eileen Landron–Guardiola, Landron & Vera LLP, Guaynabo, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court are the parties' briefs regarding whether the Court should partially lift the stay it granted on October 25, 2010 and proceed to adjudicate the complaint [1] filed by Cape Bruny Tankschiffarts GmbH and Co. KG and Cape Bruny Shipping Company Ltd., as owner and bareboat charterer of the M/T Cape Bruny (collectively referred to as "Cape Bruny") for exoneration from or limitation of liability. (Docket Nos. 666; 667; 668; 669; 670; 693; 694; 695; 700; 703; & 704.) For the reasons discussed below, the Court declines to partially lift the stay or allow the limitation of liability action to proceed independently.

### I. PROCEDURAL HISTORY

This class action litigation arises out of an explosion that occurred on October 23, 2009 at the Gulf Oil Facility in Bayamon, Puerto Rico. The most recent amended complaint was filed on October 22, 2010 and identifies thirty-seven defendants.[2] (Docket No. 528–1.) On August 13, 2010, defendants Caribbean Petroleum Corporation and Caribbean Petroleum Refining LP (jointly referred to as "CAPECO") notified the Court of their voluntary bankruptcy petition filed in the United States Bankruptcy Court for the District of Delaware. (Docket No. 494.) As a result of the bankruptcy petition, an automatic stay of all proceedings in the consolidated cases [3] and

---

1. On April 22, 2010, Cape Bruny filed a complaint for exoneration from and/or limitation of liability. (Civil Case No. 10–1337, Docket No. 1.)

2. Defendant Liberty Mutual Insurance Company has since been dismissed. (*See* Docket No. 687.)

3. Civil Case No. 09–2092 is consolidated with 09–2095, 09–2096, 09–2118, 09–2148, 09–

the limitation of liability action[4] resulted for the CAPECO defendants. (*See* 11 U.S.C. § 362(a); Docket Nos. 497 & 533.) In light of the automatic stay as to CAPECO, the Court also granted a motion to stay all proceedings against the other non-bankrupt defendants on October 25, 2010. (Docket No. 533.) Basing its decision to stay the proceedings as to the non-bankrupt defendants on an "unusual circumstances" analysis, the Court granted the stay "pending further orders from the Bankruptcy Court." *Id.*

On May 31, 2011, Cape Bruny moved this Court for a partial lifting of the stay in order to allow the limitation of liability proceeding to go forward. (Docket No. 583.) On June 3, 2011, the Court granted the motion and modified the stay in order to allow this Court "to determine whether it has subject matter jurisdiction to hear and adjudicate the complaint filed by the Cape Bruny parties for exoneration from or limitation of liability" and "to consider and rule on the motion to dismiss filed by the Total Petroleum Corporation." (Docket No. 585.) After considering the parties' motions, the Court granted admiralty jurisdiction over the limitation of liability action. (Docket No. 663.) It then instructed the parties to file briefs on the issues of whether and how the Court may dispose of the motions that remain before it. *Id.*

In a brief filed July 20, 2012, Cape Bruny argued that the stay over the limitation of liability action should be lifted and requested the issuance of a Case Management Order in order to proceed with that action. (Docket No. 670.) Plaintiffs filed a brief supporting a partial lift of the stay and requesting that the Court allow the cases to proceed as to all defendants other than CAPECO.[5] (Docket No. 666.) TPPRC filed a brief arguing that all proceedings, including the limitation of liability action, should remain stayed. (Docket No. 667.) HBC joined TPPRC's brief. (Docket No. 669.) BP argued that all consolidated actions should remain stayed, contending that only the limitation of liability action should proceed if the Bankruptcy Court lifted the stay as to that action. (Docket No. 668.)

The Court ordered the parties to the limitation action to meet and propose a scheduling order by October 29, 2012. (Docket No. 685.) After filing a joint motion in compliance with that Order, TPPRC submitted a supplemental motion relaying the uncertainty among the parties as to whether the Court's Orders at Docket Nos. 663 and 685 lifted the stay as to non-bankrupt parties in the limitation of liability action. (Docket No. 694.) In its supplemental motion, TPPRC again requested that all proceedings remain stayed until the Bankruptcy Court lifts the automatic stay as to CAPECO. *Id.* Cape Bruny opposed TPPRC's supplemental motion, arguing that the limitation of liability action should proceed, (Docket No. 695), and TPPRC filed a reply to Cape Bruny's opposition, (Docket No. 700). BP also submitted a supplemental memorandum in

2215, 10–1337, 10–1030, 10–1207, 10–2030, 10–2035, and 10–2036.

4. On May 4, 2010, the Court granted plaintiffs' motion to consolidate the limitation of liability action with the other consolidated cases. (Docket No. 334.)

5. Plaintiffs contend that the Court should deny the motions to dismiss filed by Total Petroleum Puerto Rico Corporation ("TPPRC"), BP Products North America, Inc. ("BP"), and Harbor Bunkering Corporation ("HBC"), with respect to the issue of admiralty jurisdiction. (Docket No. 666.) Given that the Court already granted admiralty jurisdiction over the limitation of liability action, it need not address that argument.

support of the joint case management order in which it renewed its argument that only the limitation of liability action should proceed. (Docket No. 703.) AOT Limited, Astra Oil Trading N.V., and Astra Oil Company LLC (collectively, "Astra") filed a response to TPPRC's supplemental motion, agreeing with BP's position that only the limitation of liability case should go forward. (Docket No. 704.)

## II. FACTUAL BACKGROUND

The following facts are taken from the fourth amended complaint, (Docket No. 528). On October 23, 2009, an explosion and fire occurred at the Gulf Oil Facility located in Bayamon, Puerto Rico. The explosion occurred during the cargo unloading process of 278,000 gallons of highly flammable fuel at the marine dock by the vessel M/T Cape Bruny. Plaintiffs' complaint alleges that the M/T Cape Bruny pumped too much fuel into the pipelines that connect the marine dock to the storage tanks in the oil facility; the Gulf Oil Facility's computer monitoring system was not operational; and the two employees working at the time of the explosion failed to monitor the mechanical gauge attached to the storage tank. As a result of the overpumping of fuel and the lack of oversight of the operation, the storage tanks overflowed without detection, and the fuel vaporized and spread across the Gulf Oil Facility. Once the vaporized fuel found a source of ignition, an explosion resulted, affecting the oil facility and a large part of the metro San Juan area.

## III. DISCUSSION

### A. The Parties' Contentions

#### 1. TPPRC and HBC

TPPRC and HBC urge the Court to refrain from lifting the stay on either the consolidated cases or the limitation of liability action until the Bankruptcy Court has completely lifted the automatic stay as to CAPECO. They argue that allowing the limitation of liability action to proceed while the rest of the consolidated cases remain stayed improperly severs the two cases. (Docket No. 694 at p. 5.) None of consolidated cases, they contend, can be properly litigated until the Court lifts the stay as to non-bankrupt parties and until the Bankruptcy Court lifts the automatic stay as to CAPECO, "because CAPECO's participation is necessary for the proper adjudication of the claims in both sets of cases." (Docket No. 694 at p. 8.) "[T]he crux of plaintiffs' claims in the consolidated cases stem[s] from CAPECO's alleged negligence in their operation and maintenance of the facility during the delivery of cargo on or around October 23, 2009." *Id.* at p. 7. Because Cape Bruny has requested a complete exoneration of liability, TPPRC and HBC argue "it is virtually impossible to rule on Cape Bruny's liability without also ruling on many of the critical factual determinations that would likely have to be made in the rest of the consolidated cases as to the other defendants...." (Docket No. 667 at p. 7.) Thus, allowing the limitation of liability action to proceed before the consolidation cases is "unworkable," and entails "piecemeal, inefficient, and duplicative litigation." (Docket No. 667 at p. 7.)

According to TPPRC and HBC, litigating the limitation of liability action separately from the consolidated cases also "raises significant non-mutual issue preclusion concerns," *id.* at p. 6, and ignores "critical threshold jurisdictional and applicable law issues pending in the consolidated cases, as well as pending and fully briefed dispositive motions." (Docket No. 667 p. 7.) Many of the defendants in the consolidated cases have contingent contribution claims against Cape Bruny in the limitation of liability action, and TPPRC

and HBC view the limitation of liability action as "extremely intertwined with the rest of the consolidated cases." (Docket No. 667 at p. 8.) ("[I]f the limitation of liability action were to proceed, TPPRC and other defendants in the consolidated cases could not reasonably be expected to sit on the sidelines. . . ."). They therefore urge the Court to refrain from lifting the stay until the Bankruptcy Court lifts the automatic stay as to CAPECO.

## 2. Cape Bruny

Defending the limitation of liability action as "a versatile tool that establishes a method to marshal the different claims related to the same incident into one process," Cape Bruny seeks to proceed with the limitation action immediately. (Docket No. 670 at p. 9.) It claims that "a distinguishable scenario" exists between the consolidated cases and the limitation of liability action that justifies the separate adjudication of each: "the limitation of liability action is a pure admiralty proceeding which directly involves the vessel, the cargo, the vessel owner and maritime commercial activity," while the consolidated cases no longer involve those parties.[6] *Id.*

at p. 8. It advocates for lifting the stay as to the limitation of liability action because that case is the most procedurally advanced; is flexible and expeditious; is an appropriate and useful procedure to determine liability and allocate fault; and involves no jurisdictional or cause of action complications at this time. *Id.* Cape Bruny also contends that the limitation of liability action "is not contingent upon or subsidiary to any further activity before the Bankruptcy Court." (Docket No. 695 at p. 3.) Accordingly, it requests that the Court "issue a Case Management Order fully putting [the limitation of liability action] on a direction to full adjudication and resolution." (Docket No. 670 at p. 10.)

## 3. BP and Astra

BP and Astra support Cape Bruny's position to continue with the limitation of liability action. Because the limitation of liability case "will necessarily address central issues of how the incident occurred and who, if anyone, is legally responsible," BP argues that once the Bankruptcy Court lifts the stay as to limitation of liability action,[7] the Court should proceed with that

---

6. The Court finds Cape Bruny's argument that "the Capeco refinery parties are no longer involved in any action," (Docket No. 670 at p. 10), to be misleading. CAPECO has asserted a counterclaim against Cape Bruny in the limitation of liability action, (Docket No. 390), and Caribbean Petroleum Liquidation Trust continues to submit motions in which it declares its position "as successor in interest to CAPECO." (*See e.g.,* Docket Nos. 632 & 727.)

7. The Court granted a stay as to the nondebtor parties in 2010 "pending further orders from the Bankruptcy Court," (Docket No. 533 at p. 10), but to date it has not been presented with a Bankruptcy order explicitly lifting the automatic stay to permit the limitation of liability action to proceed. The parties reference one paragraph from a stipulation between Cape Bruny and CAPECO and Gulf Petroleum Refining (Puerto Rico) Corporation to argue that the Bankruptcy Court has im-

plicitly lifted the stay to permit the limitation of liability action to proceed: Paragraph 2 of the Stipulation states, *"District Court's Adjudication of the Exoneration or Limitation Request. . . .* [T]he Automatic Stay, Section 11.4 of the Plan, and any other injunction or stay of the Bankruptcy Court or the Plan shall not apply to the District Court's adjudication of the Exoneration or Limitation Request." (Docket No. 667–8 at p. 4.) The parties have informed the Court about a Bankruptcy order approving the stipulation on May 9, 2011. (*See* Docket No. 632 at pp. 3–4.) They fail to present any authority, however, showing how such a "Bankruptcy-approved" stipulation operates as a lifting of the automatic stay to permit the limitation of liability action to proceed, or demonstrating, as Cape Bruny claims, that the Bankruptcy Court has "fully vetted and cleared" the issue.

Even if the Bankruptcy-approved stipulation constitutes an order permitting the Court

case. (Docket No 668 at p. 4.) It recommends, however, that the Court not remove the stay on the consolidated cases. *Id.* Quizzically, BP then acknowledges that over 2,000 of the plaintiffs, and several of the defendants, from the consolidated cases are not parties in the limitation of liability action, and suggests that "the claimants in the limitation of liability action who are also plaintiffs in the consolidated actions should submit a Master Answer and Claim to the limitation of liability petition ... [and the] claimants who are also defendants in the consolidated class actions should then move, answer, or otherwise respond to those master pleadings." *Id.* at pp. 4–5.

BP disagrees with TPPRC that all filed actions should proceed simultaneously, and instead contends that the "rules and purpose" of a limitation of liability action inherently encourage the separation of such a proceeding from the consolidated cases. (Docket No. 703 at p. 3.) The limitation action, BP argues, "should not be limited to the narrow question of the vessel's liability ... [because] all appropriate claims as to liability may be adjudicated alongside the vessel's claims for limitation and exoneration." *Id.* at pp. 5–6. Citing Federal Rule of Civil Procedure Rule 14(c) ("Rule 14(c)") and case law, BP encourages the Court to extend the scope of the limitation proceeding beyond the exoneration from or limitation of liability issue to the adjudication of related claims and "furnish a complete remedy to all parties." *Id.* at p. 6. Astra agrees with BP's position; it ar-

gues that the limitation of liability action should proceed and that additional defendants should be allowed to join the limitation of liability action "by way of third party claims, or Rule 14(c) claims, or otherwise." (Docket No. 704 at p. 1.)

### B. The Court's Analysis

The Court is not convinced that a partial lifting of the stay is warranted at this time. Several reasons lead to this conclusion. First, none of the parties explicitly argues or otherwise demonstrates to the Court that the circumstances initially warranting the stay as to all non-debtor parties have changed. Given the automatic stay and Plan injunction in place as to CAPECO in 2010, the Court in its October 25, 2010 order extended the stay to all non-debtor parties because—the parties argued[8] and the Court agreed—"unusual circumstances" exist. (*See* Docket No. 533.) BP, TPPRC, and HBC steadfastly sought a stay as to all proceedings because plaintiffs' claims "are hopelessly intertwined," (Docket No. 517 at p. 7), and because the cases involve "non-debtor indemnitees," (Docket No. 517 at p. 9; Docket No. 511 at p. 7; Docket No. 516). BP now changes its position, but the parties fail to convince the Court that such unusual circumstances no longer pose a threat to the litigation. Without a developed analysis disputing that the "inextricably interwoven" claims and indemnification issues existing in 2010 persist today, the Court remains unper-

---

to adjudicate the limitation of liability action, the Court declines to do so. It agrees that the cases are closely intertwined and is persuaded by the Bankruptcy Court's admonition that adjudicating the limitation of liability action necessarily entails unleashing the consolidated cases. Due to the automatic stay, not all cases are ready to proceed. Accordingly, now is not an opportune time to adjudicate the limitation of liability action.

8. In 2010, co-defendants TPPRC, HBC and BP argued that "unusual circumstances" exist (1) because CAPECO's participation is necessary for the proper adjudication of the claims and (2) because the co-defendants are entitled to indemnity by CAPECO. (Docket No. 533 at p. 9) (citing Docket Nos. 511, 516, & 517).

suaded that a partial lifting of the stay is appropriate.

Second, the parties have not sufficiently demonstrated the value of separating the limitation of liability action from the consolidated cases. When the Bankruptcy Court denied Cape Bruny's initial request partially to lift the automatic stay in July 2012, it referenced the inherent complexity involved in proceeding with the limitation of liability action alone: "Lifting the stay to permit the [l]imitation of [l]iability [a]ction to proceed would, by necessity, unleash the thousands of consolidated actions." (Docket No. 667–7 at p. 4.) Good cause existed, however, for consolidating the limitation of liability action with the other consolidated cases in May 2010, and for staying all cases in October 2010. (*See* Docket Nos. 326, 334, & 533.) Plaintiff Eliezer Cruz–Aponte's unopposed motion to consolidate the limitation of liability action with the other consolidated cases was based on the premise that the actions involved "the same nucleus of operative facts, the same or similar claims and similar questions of law and fact arising from the explosion at CAPECO on October 23, 2009 ... [and] is likely to effectuate a substantial saving of judicial effort." (Docket No. 326 at p. 2.) Further, TPPRC, HBC, and BP once argued that "everything points to the stay of the proceedings in their entirety," (Docket No. 511 at p. 9 & Docket No. 516), because the allegations "are inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding," (Docket No. 517 at p. 7), and "it is in the best interest[s] of all parties and this Honorable Court to avoid multiple or piecemeal litigation...." (Docket No. 511 at p. 9 & Docket No. 516.)

The Court cannot deduce from any of the parties' briefs how allowing the limitation of liability action to proceed independently is consistent with their prior requests to consolidate and stay all proceedings. BP today asserts, for example, that "[i]n light of the fact that the limitation action will necessarily address central issues of how the incident occurred and who, if anyone, is legally responsible, the limitation action is the case that should proceed.... The other actions should remain stayed." (Docket No. 668 at p. 4.) It also argues that "[t]he limitation action, however, should not be limited to the narrow question of the vessel's liability," *id.* at p. 5, and suggests that the Court may provide a remedy "for *all issues arising from* the incident," *id.* at p. 7 (emphasis added). Although Cape Bruny has consistently sought to allow the limitation of liability action to proceed independently, (*see* Docket No. 509), it currently contends that the limitation of liability action "is not contingent upon or subsidiary to any further activity before the Bankruptcy Court," (Docket No. 695 at p. 3). Cape Bruny, however, does not flesh out how the limitation of liability case "presents a distinguishable scenario" from the consolidated cases, (Docket No. 670), such that proceeding with it independently is prudent given the "inextricably interwoven" claims and common questions of law and fact that TPPRC, HBC, and BP once identified.[9] The Court finds

9. Moreover, the Court finds unavailing Cape Bruny's contention that the adjudication of the limitation of liability action would be "simple and quick." (Docket No. 695 at p. 3.) A limitation of liability case requires the Court to engage in a two-part analysis: first, it must determine whether negligence or condition of unseaworthiness caused the accident; and second, if so, whether the shipowner was privy to, or had knowledge of, the causative agent (whether negligence or unseaworthiness). *Carr v. PMS Fishing Corp.,* 191 F.3d 1, 4 (1st Cir.1999). As discussed above, the parties—including Cape Bruny—recog-

the arguments above to be conclusory and woefully undeveloped, *see McDonough v. Donahoe*, 673 F.3d 41, 49 n. 14 (1st Cir.2012), and it refuses "to do counsel's work, create the ossature for the argument, and put flesh on its bones.... Judges are not expected to be mind-readers." *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990).

Because none of the parties demonstrate (1) that the "unusual circumstances" warranting a stay in 2010 do not now exist; or (2) that their request to separate the limitation of liability action from the consolidated cases can be reconciled with their prior requests to consolidate and stay all proceedings, the Court declines to lift the stay to allow the limitation of liability action to proceed independently.

## IV. CONCLUSION

For the reasons stated above, the Court declines to partially lift the stay imposed on October 25, 2010 as to both the consolidated cases and the limitation of liability action. Accordingly, the stay will remain in place pending further orders from the Bankruptcy Court.

**IT IS SO ORDERED.**

nize that the limitation of liability action will necessarily address central issues of how the incident occurred, and who is legally responsible, (Docket No. 667 at pp. 7–8; Docket No. 668 at p. 4; Docket No. 669; Docket No. 670 at p. 9; Docket No. 695 at p. 3; Docket No. 703), and the Bankruptcy Court explicitly acknowledged that proceeding with the a limitation of liability action requires the unleashing of the "thousands" of consolidated cases, (Docket No. 667–7 at p. 4). In light of those issues, and without further elucidation by the parties, the Court fails to see the value in separating the two actions and permitting the limitation of liability action to proceed independently.