**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 20-2134

MARIA FOURNIER,

Plaintiff, Appellant,

v.

COMMONWEALTH OF MASSACHUSETTS, Executive Office of the Trial
Court, LEWIS SPENCE, JOHN BELLO, JONATHAN WILLIAMS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, U.S. District Judge]

Before

Thompson, Barron, Hawkins,[*]
Circuit Judges.

Benjamin Flam, with whom Philip J. Gordon, and Gordon
Law Group LLP were on brief, for appellant.
J. David Hampton, Assistant Attorney General, with whom
Maura Healey, Attorney General of Massachusetts, was on brief, for
appellees.

September 15, 2021

---

[*] Of the Ninth Circuit, sitting by designation.

**HAWKINS**, **Circuit Judge**. Plaintiff Maria Fournier ("Fournier") appeals the grant of summary judgment in favor of Defendants, Commonwealth of Massachusetts, Lewis Spence, John Bello, and Jonathan Williams ("Defendants"), on her unlawful retaliation claims under Title VII, 42 U.S.C. § 2000(e), and the Massachusetts Whistleblower Act, Mass. Gen. Laws ch. 149 § 185 ("MWA"). We reverse and remand.

## I.[1]

Fournier became the Director of Support Services for Massachusetts's Executive Office of the Trial Court ("Trial Court") in 2013. One of the departments within Support Services, the Office of Interpreter Services ("OCIS"), had been the frequent subject of criticism by judges, clerks, and members of the public, who complained about its efficiency. When Fournier started, her supervisor, Court Administrator Lewis Spence ("Spence"), warned her that some difficult changes needed to be made across Support Services and that there would be opposition from court staff and other stakeholders. But they worked together, and Spence was initially encouraged by Fournier's determination.

During her tenure as Director of Support Services, Spence conducted two annual performance reviews of Fournier and

---

[1] We recite the facts in the light most favorable to Fournier because her case has come before us on her appeal from a grant of summary judgment. See Taite v. Bridgewater State Univ., Bd. of Trustees, 999 F.3d 86, 89 n.2 (1st Cir. 2021).

both highlighted positive and negative aspects of her work. For example, in her 2015 review, Spence praised Fournier's ability to "take hard actions with staff," but criticized her communication skills and ability to "manage for the long term." In her 2016 review, Spence recognized that Fournier had increased the efficiency of OCIS, while noting that her work was met with "widespread dissatisfaction." At some point, Spence asked Director of Facilities John Bello ("Bello") to supervise and train Fournier due to his concerns with "Fournier's ability to manage." By 2016, Spence became concerned that progress toward organizational improvement at OCIS had waned.

To address OCIS's issues, the Trial Court hired a consulting firm, the Ripples Group ("Ripples"), to examine OCIS's problems and offer solutions. Attila Habip ("Habip"), a founding partner of Ripples, largely executed the review. At the conclusion of its investigation, Ripples gave a presentation to Trial Court management, including Spence, that suggested Fournier was largely the root cause of OCIS's deficiencies. As such, Habip specifically suggested (1) "re-launching" Fournier, "meaning to undertake a major effort to improve her performance and how she was perceived," or (2) removing her as Director of Support Services. Both Spence and Habip went on vacation for a week following the presentation.

When Habip returned to the office, he met with Fournier to discuss his findings, communicated the results of the Ripples

investigation "pretty bluntly," and told her "that 'a relaunch of OCIS and [her]' was necessary"; Fournier seemed to agree.  She also recalled that Habip stated:  "I think we need to rebrand [] you," and tried to convince her to go somewhere else in the Trial Court.  But there was no discussion of transfer, demotion, or removal.

A few days after her meeting with Habip, on March 30, Fournier told Human Resources Director Mark Conlon ("Conlon") about a blatantly racist comment directed at one of her colleagues, Chief Experience and Diversity Officer John Laing ("Laing").

The next morning, on March 31, Spence called Fournier into a meeting to inform her that he "did not have confidence in her ability to continue as [] Director of Support Services" and advised her of "the range of options available to [him], which included demotion and/or separation."

The parties dispute whether Spence was aware of Fournier's complaint to Conlon before their March 31 meeting. Fournier testified that Conlon told her that he had told Spence about her report on March 30.  But Spence testified that he was not aware of Fournier's complaint prior to their March 31 meeting. See Fournier v. Exec. Off. of the Trial Ct., 498 F. Supp. 3d 193, 205 (D. Mass. 2020).

Spence proceeded to inform Fournier via letter (the "charge letter") that he would convene an informal hearing

- 4 -

regarding her removal to examine her performance problems, namely her inappropriately adversarial nature and lack of managerial skills. The hearing ultimately resulted in an impasse. Spence placed Fournier on paid administrative leave, explaining that her unsatisfactory behavior and performance were hindering the operational needs of the Trial Court. The same day, Spence retired, and Bello became the interim Court Administrator.

About two weeks later, Fournier contacted the Trial Court's Human Resources Department ("HR"), stating that Spence had retaliated against her for complaining about the racist comment directed at Laing. HR promptly forwarded Fournier's account to Administrative Attorney for Diversity Heena Trivedi, who commenced an investigation. Trivedi met with Fournier to discuss her retaliation allegations, in addition to interviewing a host of other Trial Court stakeholders. Trivedi eventually issued a lengthy report, concluding that Spence's actions were supported by legitimate business reasons and not motivated by retaliatory animus.

Meanwhile, as the interim Court Administrator, Bello began to hear the same criticisms about Fournier's volatile management style that Ripples identified, e.g., Fournier was prone to "lash[ing] out in anger resulting in a lack of communication for days." He also convened another informal hearing with Fournier concerning her removal. Again, they reviewed Spence's charge

letter and the Ripples presentation's account of Fournier's poor behavior and performance. Fournier responded in written, denying any wrongdoing and requesting to be restored to her position as Director of Support Services.

After the hearing, Bello sent a letter to Jonathan Williams, who had assumed his role as Court Administrator, recommending Fournier's termination based on her inability to improve OCIS, due to her hostile management style and dismal rapport with her subordinates. HR also sent a letter to Williams consistent with Bello's termination recommendation.

Finally, having reviewed Fournier's written submissions, HR's review and recommendation, and Bello's recommendation, Williams terminated Fournier from her employment with the Trial Court. Fournier did not appeal.

Fournier proceeded to bring this suit against Defendants. After Defendants filed a motion to dismiss Fournier's complaint, the parties agreed to dismiss certain claims with prejudice but to allow Fournier to proceed with her unlawful retaliation claims under Title VII and the MWA. The district court subsequently granted Defendants' summary judgment on these claims, and Fournier timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

We review a district court's grant of summary judgment de novo, McDonough v. Donahoe, 673 F.3d 41, 46 (1st Cir. 2012), and draw "all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation," Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013) (internal quotations and citations omitted).

### A.

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate:

> (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.

Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (internal citation omitted). "[T]he prima facie burden in this context is not an onerous one." Id. at 26. Similarly, to establish a retaliation claim under the MWA, a plaintiff "must show that [she] engaged in protected activity and that [her] participation in that activity played a substantial or motivating part in the retaliatory action." Pierce v. Cotuit Fire Dist., 741 F.3d 295, 303 (1st Cir. 2014) (internal quotations and citations omitted).

Fournier has established a prima facie case of retaliation under Title VII and the MWA.

First, it is undisputed that Fournier engaged in protected conduct when she complained about the racist comment.

Second, an adverse employment action is typically one that "alter[s] a term or condition of employment," Bishop v. Bell Atl. Corp., 299 F.3d 53, 59 (1st Cir. 2002), such as demotions, disadvantageous transfers, or refusals to promote, Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018). But the anti-retaliation provisions of Title VII also cover employer actions that are materially adverse, specifically those that are harmful enough to dissuade a reasonable employee from complaining about discrimination. Id. at 95; see also Mole v. Univ. of Massachusetts, 814 N.E.2d 329, 339 & n.14 (Mass. 2004)(An "adverse action is any action to coerce, intimidate, threaten, or interfere with the [employee]." (internal quotations omitted)). As such, a juror could reasonably conclude that Fournier indeed suffered an adverse employment action when Spence threatened Fournier with termination, demotion, and/or transfer, even though she was not officially terminated from the Trial Court on that day.

Finally, a reasonable juror could also find that there was a causal connection between Fournier's complaint and the adverse employment action she suffered. Although Defendants note that employers, who are "proceeding along lines previously

- 8 -

contemplated, though not yet definitively determined, is no evidence whatever of causality," Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001), such an objection is not fatal here. First, Ripples did not, and could not, establish a definitive course of action for Fournier's future with the Trial Court, instead it suggested removing her from *or* "relaunching" her within the organization. Second, Spence had knowledge of Ripples's suggestions and their findings but did not act on this knowledge until the end of his first week back from vacation and the day after Fournier lodged her complaint. A reasonable factfinder could also conclude that Spence knew of Fournier's complaint before their March 31 meeting, given her testimony. Third, the temporal proximity between Fournier's complaint and the adverse employment action she suffered was one day, which is a sufficiently brief period for a reasonable factfinder to determine causation. See Calero-Cerezo, 355 F.3d at 25 (stating that "very close" temporal proximity can be sufficient evidence of causality alone to establish a prima facie case (quoting Clark County Sch. Dist., 532 U.S. at 273-74)).[2]

---

[2] To the extent that Fournier alternatively argues her ultimate termination from the Trial Court was influenced by Spence's retaliatory animus as well, a reasonable juror could find that Williams rubber-stamped Spence's decision. See Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015).

**B.**

When a prima facie case of Title VII retaliation is established, absent direct evidence of retaliation, we employ the burden-shifting approach announced by the Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973):

> [The] defendant must articulate a legitimate, non-retaliatory reason for its employment decision. If the defendant meets this burden, the plaintiff must now show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus.

Calero-Cerezo, 355 F.3d at 26. A similar burden-shifting framework is also employed for MWA claims. See Pierce, 741 F.3d at 303.

Defendants have proffered legitimate, non-retaliatory reasons for their removal decision, namely a lack of confidence in Fournier's ability to manage due to her unprofessionalism and underperformance. See Ponte v. Steelcase Inc., 741 F.3d 310, 322-23 (1st Cir. 2014).

Turning to pretext, courts typically view the record as a whole and focus on whether the plaintiff "adduced sufficient evidence to create a genuine issue as to whether retaliation was the real motive underlying [her] dismissal." Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012). Such evidence may include "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

- 10 -

employer's proffer," the close temporal proximity between the protected conduct and the adverse action, or the sequence of events leading up to the adverse action. Id. at 33 (quotations, citations, and alterations omitted). Moreover, "[c]ourts should be especially cautious before granting summary judgment when pretext and retaliatory animus are at issue." Id.

A juror could reasonably find that Spence's proffered reasons for removing Fournier from Director of Support Services were pretextual in nature.[3] As discussed, Spence waited over a week to take any steps to confront Fournier about his concerns with her performance in light of the Ripples presentation. What's more, Spence informed Fournier of his removal decision the day after she submitted her complaint. There is also no evidence that anyone at the Trial Court, including Spence, ever explicitly contemplated removing Fournier before her complaint. The Ripples report, which detailed Fournier's shortcomings at length, even suggested "relaunching" her within the organization. Finally, the temporal proximity between Fournier's complaint and her removal was a one-day period. Taken together, these circumstances present material questions that a jury must resolve.

---

[3] Fournier uses the same evidence to demonstrate causation and pretext. Because similar evidence can support causation and pretext, see, e.g., Ponte, 741 F.3d at 323, we can consider all of Fournier's proffered evidence as support for pretext.

## III.

For the foregoing reasons, we **reverse** the decision of the district court and **remand** for further proceedings consistent with this decision. The parties shall bear their own costs on appeal.